[Civ. No. 27864.    Second Dist., Div. Two.    Aug. 21, 1964.]

JOHN J. GUERIN, Plaintiff and Respondent, v. CALIFORNIA WESTERN STATES LIFE INSURANCE COMPANY, Defendant and Appellant.

Frank M. Benedict for Defendant and Appellant.

John J. Guerin, in pro. per., and David S. Smith for Plaintiff and Respondent.

HERNDON, Acting P. J.—Defendant, the insurer, appeals from the judgment entered against it following a nonjury trial in which it was determined that it was liable for payment of certain specified benefits due to respondent as beneficiary under a group insurance policy issued to his father. Appellant challenges the reasonableness of the interpretations placed upon certain terms of its policy by the trial court and the sufficiency of the evidence to sustain certain findings of fact made by the trial court on the issue of estoppel.

Respondent is the son of Joseph P. Guerin, who, during

his lifetime and until the time of his death on August 24, 1962, was an active member of the State Bar of California. The insurance in question was issued by appellant under The State Bar of California Life Insurance Program in July of 1958, wherein and whereby appellant insured the life of Joseph P. Guerin in the sum of $10,000. Following the insured's death in 1962, appellant refused to make any payment on this policy and the present action followed. Appellant insurer filed its answer, alleging that the effective date of the policy was July 1, 1958; that the policy provided for the payment of a semi-annual premium of $120 and allowed a grace period of 31 days for the payment of each premium after the first during which time the policy remained in force. Appellant further alleged that the insured failed to pay the premium on the policy which became due and payable on July 1, 1962, and, because of this nonpayment, said policy became null and void.

The policy in issue provides initially that appellant ''hereby insures the individual designated below who is a member of The State Bar of California (herein called the Association) . . .'' The application for this insurance was submitted by respondent's father and is attached to the policy and made part of the contract of insurance. Although appellant had stamped ''JUL 1 1958'' following the words ''Effective Date'' on the application,[1] the application itself expressly provided: ''The Company shall incur no obligation because of this application unless and *until a policy is issued and the first premium is paid in full.*'' (Italics added.) The policy also provided on the face thereof: ''This Policy shall be in force from the Effective Date shown on the copy of the application attached hereto only if on such date (a) the Covered Person is actively and regularly engaged in an occupation on a full-time basis and (b) *the required first semiannual or annual premium has been paid to the Company.* If this Policy does

---

[1] Although the exact time when this stamped date was placed upon the application is not revealed by the record, it is clear that it was not stamped thereon until after the application had been submitted by the insured and accepted by the appellant. This is apparent from the fact that it is found on the lower portion of the application in a portion containing the printed instruction: ''To Be Completed By Company.'' Further, it would appear that it was most probably placed thereon at or about the time the policy itself actually was issued, since the number of this specific policy likewise has been stamped on this portion of the application following the words ''Policy Number.'' As indicated, *post*, this would have occurred at some time during the period between July 18 and July 28, 1958.

not commence on such Effective Date, it shall not be in force until conditions (a) and (b) above are first both fulfilled.'' (Italics added.)

■ Since neither the first premium had been paid on the stamped date nor had a policy been issued, it cannot reasonably be contended that the policy was in force on that date or that appellant would be entitled to collect premium payments computed therefrom. It also is immediately apparent that a possible ambiguity is created by the alternative provisions in the application and in the policy itself regarding the date appellant's liability under the contract was to originate. That is, the requirements set forth in the application appear to require both that (1) the first premium be paid and (2) that the policy be issued, whereas, the language of the policy would appear to be applicable only where the policy itself has been issued prior to payment of the first premium, and provides that despite this issuance it shall not take effect until the first premium has been paid.

The first premium actually was paid by check dated July 12, 1958. It contained perforations indicating that it was ''PAID 7 18 58.'' In addition, it was stipulated that this check was actually received by appellant's forwarding agent on July 14, 1958, and that the policy itself would have been issued at some time within 10 days after July 18, 1958.

It is clear that there are at least three possible dates, each of which might reasonably be determined to be the true effective date of the policy from which the period of coverage should be computed and for which premiums might be charged. If the conditions precedent to liability set forth in the application were deemed controlling, the commencement date could be as late as July 28, 1958, i.e., the policy was not issued until some 10 days after the check tendered in payment was actually honored.

On the other hand, if the terms of the application are ignored, despite the fact they would appear to govern except in those instances where a policy might have been issued prior to receipt of the first premium, the commencement date would be either July 14, 1958, the date the check tendered in payment of the first premium payment was received by appellant's forwarding agent or July 18, 1958, the date said check was paid. The latter date might appear the more acceptable since the presentment of a check that was subsequently dishonored ordinarily would not be deemed to satisfy the specified precedent condition that ''the required first semi-

annual or annual premium *has been paid to the Company.*" (Italics added.) (Cf. *Kansas City Life Ins. Co.* v. *Davis,* 95 F.2d 952, 957.)

As stated in 38 Cal.Jur.2d, Payment, section 20, page 262, "A check may operate as an absolute or merely as a provisional or conditional payment, depending on whether the parties intend one or the other result, but it is never an absolute payment until it is itself paid, unless expressly agreed otherwise. And no presumption arises from its acceptance that it is received in absolute payment. The party seeking to prove payment by mere delivery and acceptance of a check must go further and prove that the delivery and acceptance were in accordance with an agreement that the check was to be accepted as payment."

However, in the instant case, no issue is made regarding the possible dishonor of the check, and the policy itself contains the following provisions regarding premiums and their payment: "The premiums for this Policy are determined by the table of premium rates set forth herein and are payable in advance to the Company *by the Association or its designated agent.* These premiums are based on the assumption that *the Association or its designated agent will collect the premiums. . . . Failure of the Association or its designated agent to transmit the premiums after receipt from the Covered Person shall not prejudice the Covered Person's coverage under this Policy.* The Company reserves the right to refuse the services of any designated agent." (Italics added.)

The trial court made a finding "That the first premium was paid July 14, 1958, and the policy became effective July 14, 1958." We need not here consider whether a finding fixing the other possible dates as the effective date of the policy would have been reasonable and proper under the facts here presented since the date actually established by the trial court was the one most favorable to the contentions made by appellant herein, and, hence, even if it were erroneous appellant could not be said to have been prejudiced thereby. As heretofore noted, of course, it could not possibly be contended that appellant assumed any obligations or liabilities under the policy prior to July 14, 1958.

Section 480 of the Insurance Code provides: "An insurer is entitled to payment of the premium as soon as the subject matter insured is exposed to the peril insured against." Sections 481 to 483 regulate the return of premiums paid where no risk of liability is incurred by the insurer for some

or all of the period contemplated. "Payment of a premium is for the whole premium period, unless the policy specially provides otherwise or insurer waives its right. In the absence of an express agreement to the contrary, premiums will be so applied as to give insured the protection for which he pays." (44 C.J.S., Insurance, § 344, p. 1314.)

Despite the fact that appellant incurred no risk until the *true* effective date of its policy, as determined by its own express terms, appellant nevertheless insists "that as the effective date of the policy was July 1, 1958, the following semiannual premiums became due and payable on January 1st and July 1st of each subsequent year, and that the grace period expired for the payment of each such semiannual premium, on February 1st and August 1st, respectively." Since it never offered to refund any portion of the premium attributable to the period for which no risk was incurred, appellant is in a poor position now to assert that the trial court was legally bound to ignore the terms of its own policy and establish the earlier date of July 1st as the effective date, and allow it to retain the excess premium that would result therefrom.

■ The policy itself contains no provisions directly establishing the dates upon which the required semiannual payments are to be made. The policy runs for an indefinite period. Tacitly, at least, appellant appears to agree that, in the absence of an express provision specifying the due dates of subsequent payments, such payments ordinarily would become due on the anniversary date following the effective commencement date of the policy. As indicated, it maintains that the stamped date, July 1, 1958, must be considered the effective date notwithstanding the clear and unequivocal provisions of its policy that such date shall govern only when certain specified conditions exist, which concededly did not exist here, and that in the absence of such conditions, the effective date shall be the first date on which all such conditions have been fulfilled.

Under the heading "Termination" the policy provides: "This Policy will terminate on the earliest of the following dates: . . . (c) the expiration of the grace period allowed following the due date of the first unpaid premium, . . ." Under section 480, Insurance Code, quoted *supra*, appellant would not be entitled to its initial premium until some risk had been incurred. This could not have been earlier than July 14, 1958, and, in the absence of some agreement to the contrary, appellant would not have been entitled to payment

of the second semiannual premium until six months thereafter. Certainly appellant could not reasonably argue that if no grace period had been provided, its liability under the policy would have terminated automatically upon failure of the insured to pay his second premium on January 1, 1959, and that his death between that date and January 14, 1959, would not be a risk covered by the policy.

The provision concerning the grace period appears under the heading "Premiums" and states: "A grace period of thirty-one days, without interest charge, will be allowed for the payment of any premium after the first, during which time this Policy shall remain in force. If the Covered Person dies within the grace period, any premium then due and unpaid will be deducted from the proceeds." While this provision also wholly fails to specify the specific due date of the second and subsequent payments, it appears clear that the 31 days provided must be computable from the date the policy would terminate in the absence of any grace period, for, if computed from some earlier date, the expressions "without interest charge" and "this Policy shall remain in force" would be meaningless. That is, if the grace period is to commence from a date prior to its termination, the policy would be still "in force" by its own terms and no "interest" would be due on premiums to which the company was not yet entitled.

At this point, without announcing or acknowledging its departure, appellant shifts its premises. It contends that because it began incorrectly to bill the insured for his future premium payments, this incorrect billing established the earlier dates shown thereon as the due dates because the insured failed to object thereto. As set forth in its brief, appellant initially takes the following position: "The date specified in the policy for the payment of premium controls, no matter when the policy is delivered and the first premium paid. (*Methvin* v. *Fidelity Mut. Life Assn.*, 129 Cal. 251 [61 P. 1112]; *Thomas* v. *Northwestern etc. Ins. Co.*, 142 Cal. 79 [75 P. 665].)"

The foregoing rule, though a correct one, is wholly without application here, since neither the present policy nor the application attached thereto specifies any date upon which the first or any subsequent payments are to be made. As indicated, it does provide a clear method for determining the effective date of the policy, but this results in the establishment of July 14, 1958, as such date rather than July 1, 1958.

Immediately following the statement of this wholly inapplicable rule, appellant states: "Moreover, the appellant and the decedent by their acts and conduct, before any controversy arose, construed the date for the payment of premiums as being January 1 and July 1, and such construction being reasonable will be enforced by the Court. [Citing *Lawrence Block Co.* v. *Palston*, 123 Cal.App.2d 300, 311 [266 P. 2d 856].]" This statement is likewise a correct expression of a rule of law, but we are not inclined to hold that a trial court, as a matter of law, must apply it so as to permit an insurance carrier to alter the terms of its policy by unilateral action merely because the insured does not protest such error but unwittingly accedes thereto.

However, even if the conduct of the parties could be held to be such that the due dates for premium payments had become fixed at points some two weeks prior to the expiration dates of the policy, nevertheless this fact would not assist appellant herein.

The trial court found upon incontrovertible evidence that although appellant had billed the insured upon the mistaken assumption that the premiums were due on July 1 and January 1 of each succeeding year, it had deposited checks received in payment from him without any protest or assertion of untimeliness, on the following dates: February 9, 1959; July 13, 1959; February 3, 1960; August 8, 1960; and February 14, 1961; August 7, 1961 and February 12, 1962. If the conduct of the parties had established an early due date, it likewise established a custom of accepting payments beyond the grace period that would follow therefrom. (*Vinther* v. *Sunset Mut. Life Ins. Co.*, 11 Cal.App.2d 118, 120-123 [53 P.2d 182].)

The insured and the respondent[2] apparently were misled by the premature billing dates and accepted the dates of January 1 and July 1 as the correct dates from which the grace period was to operate. Therefore, on all subsequent payments, if the payment was not mailed to the forwarding agent prior to the expiration of the grace period as computed from the date specified in the billing, they added an additional 50 cents which they believed to be the charge for late payments. In this

---

[2]The insured and the respondent were father and son and engaged in a partnership practice of the law. Certain of the checks tendered in payment of subsequent premiums were signed by each of them. These checks were drawn on a joint partnership account and apparently were signed by whichever of the partners was available and handling such billing at the time.

they were also mistaken, for although the policy itself contains no provisions for charges in addition to the premiums specified therein, it was the practice of appellant and the forwarding agent to add a 50-cent charge on the billing to cover the cost of transmittal by the agent. An employee of the agent testified that if the additional 50-cent charge was not paid, no action was taken to collect it.

Respondent testified that on August 9, 1962, he desired to make the required semiannual premium payment, but not recalling the exact amount of what he mistakenly believed to be ''the late charge'' he called the local office of the forwarding agent to make inquiry thereon. The person to whom his call was transferred by the telephone operator at the forwarding agency purported to speak on behalf of the agency, and, rather than answering respondent's inquiry, asked him when the premium was due. Relying on the erroneous billing made to him by appellant, respondent stated that it was due July 1, 1962. He was then informed that it already was too late to make the payment; that application for reinstatement would have to be made to the company.[3]

Manifestly, such advice was incorrect and stemmed directly from appellant's billings to respondent upon which he had relied in informing appellant's forwarding agent of the due date on his policy . At the time of the call the policy was still in force and the grace period for the payment of premiums would not have expired for several days. Further, as noted, even if the premium due date had been July 1, the company consistently had accepted payments after August 1 and February 1, since the inception of the policy.

---

[3]Respondent's testimony regarding this telephone conversation was properly received in evidence. (18 Cal.Jur.2d, Evidence, § 93, p. 524, and cases cited.) The fact that the call was correctly placed with appellant's agent is not challenged and, in view of the ''knowledge of the nature of the business'' disclosed by the party to whom respondent spoke, no such challenge would be reasonable. (*People* v. *Horace*, 127 Cal.App. 2d 366, 369 [273 P.2d 923].) Unlike the situation presented in *Hammond Lumber Co.* v. *Weeks*, 105 Cal.App. 315 [287 P. 573], relied on by appellant, in the instant case the identity of the particular employee of appellant's agent who purported to speak on its behalf is not material, and, further, appellant offered no evidence tending to deny that the call was in fact made. In addition, the making of the call and the result thereof is corroborated by the fact that the insured did request an application for reinstatement form as he had been advised to do by the party to whom respondent spoke instead of merely mailing in his ''late'' payment as he had done on the five times previously that he had been led to believe he was delinquent.

However, relying upon the instruction given by appellant's agent, the insured on August 14, 1962, wrote appellant requesting a reinstatement form for his policy. Appellant contended that it mailed such form to the insured on August 17, 1962, but respondent maintained that it was never received. The insured died on August 24, 1962. Thereafter, up to and including the trial of this cause, appellant continued to assert its patently erroneous contention that the policy expired on August 1, 1962, the date it had misled the insured into accepting as the termination of the grace period, contrary to the express terms of its policy.

The finding of the trial court that appellant was estopped to assert the insured's failure to make the required premium payment after its agent had stated prior to the expiration of the grace period that no such payment would be accepted, is not only supported by substantial evidence, but no other finding would appear sustainable as a matter of law. Section 1511 of the Civil Code clearly provides: "The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate: 1. When such performance or offer is prevented or delayed by the act of the creditor, . . . even though there may have been a stipulation that this shall not be an excuse; . . . 3. When the debtor is induced not to make it, *by any act of the creditor* intended or *naturally tending to have that effect, done at or before the time at which such performance or offer may be made, and not rescinded before that time.*" (Italics added.)

The trial court made an alternative finding that even if the effective date of the policy had been that erroneously asserted by appellant, it would have been estopped by reason of the fact that it had accepted payments by checks desposited by it as late as 12 and 14 days after the termination of the incorrectly computed grace period. That is, it had deposited checks received from the insured as late as the 7th and 8th of August and as late as the 9th, 12th and 14th of February. Under such circumstances it would be improper for appellant to rely on the insured's failure to make the July, 1962, payment, after its agent had informed him on August 9 that it would not be accepted since it had itself established a policy of accepting payments received by it on such a delinquent date or thereafter.

As stated in *Peterson* v. *Allstate Ins. Co.*, 164 Cal.App.2d 517, 521 [330 P.2d 843], ". . . there can be no question that

from the due date of the very first premium installment payment on the initial policy Mrs. Bailey had failed to perform in accordance with the terms of the contract. The record further shows that Allstate, with full knowledge of such facts, continued to recognize the policy as being in full force and effect by accepting delinquent, as well as insufficient, payments thereon. Such acts on the part of Allstate were wholly inconsistent with any intent to insist upon a forfeiture. It therefore waived such ground as a basis for cancellation of the policy. (See 16 Appleman, Insurance Law and Practice, 812.) Having so waived strict compliance with the deferred payment terms, it was bound to give Mrs. Bailey a reasonable notice to thereafter comply strictly with scheduled premium payments before it could depart from its usual procedure and cancel the policy for nonpayment of premium. (*Frad* v. *Columbian National Life Ins. Co.*, 191 F.2d 22; cert. denied.)'' (See also *Scott* v. *Federal Life Ins. Co.*, 200 Cal.App.2d 384, 394 [19 Cal.Rptr. 258], hear. den.)

The judgment is affirmed.

Roth, J., and Ashburn, J.,* concurred.

A petition for a rehearing was denied September 15, 1964, and appellant's petition for a hearing by the Supreme Court was denied October 15, 1964.

---

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.