195 So.2d 506 (1967)
DEPOSIT GUARANTY NATIONAL BANK OF JACKSON, Mississippi, Trustee of the Louis B. Brummett Family Trust U/A Dated July 21, 1960,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA.
No. 44200.
Supreme Court of Mississippi.
February 20, 1967.
*507 Henley, Jones & Henley, Jackson, for appellant.
Wells, Thomas & Wells, W. Calvin Wells, Jr., Jackson, for appellee.
INZER, Justice.
This is an appeal by Deposit Guaranty National Bank, as trustee, from a judgment of the Circuit Court of the First Judicial District of Hinds County, Mississippi, wherein it was held that a policy of life insurance issued by The Prudential Insurance Company of America had lapsed on account of nonpayment of insured's premium. Deposit Guaranty National Bank, appellant, brought suit in its capacity as trustee of the Louis B. Brummett Family Trust to recover benefits of the policy on the life of Louis B. Brummett, who was killed in an automobile accident on September 2, 1961.
Prudential, appellee-insurer, defended on the grounds that Mr. Brummett had permitted the insurance policy to lapse for failure to pay a premium.
Appellant-trustee took the position that on the date the premium became due appellee insurance company had in its possession funds due to Mr. Brummett in excess of the amount of the premium then due, and that these funds should have been applied by the insurance company to the payment of the premium, thereby preventing lapse of the policy sued on.
This case was submitted to the trial court on the pleadings, stipulations, briefs and oral argument. The trial judge in a written opinion held that the policy had lapsed for failure to pay the premium, and a judgment was entered dismissing the suit.
The policy sued on, Number 10449426, was issued to Mr. Brummett on December 13, 1938, by the insurance company in the face amount of $5,000 with a double indemnity benefit of $5,000. Gladys R. Brummett, wife, was named as beneficiary. Later the beneficiary was changed to "The Deposit Guaranty Bank and Trust Company of Jackson, Mississippi, Trustee under Trust Agreement dated July 21, 1960," and it was serving in its trust capacity as beneficiary on the date of Mr. Brummett's death.
On April 13, 1961, a quarterly premium of $34.90 became due on the policy, which *508 at that time had a loan value of $1,536.65 and an outstanding loan against it in the amount of $1,536.60. There were no dividends or loan value then available in the policy for payment of premiums.
In addition to the policy involved in this suit, insured had five other life insurance contracts for the same amounts and containing similar provisions. All six of the policies contained a statement that the insured alone was entitled to receive any dividends and to obtain any loan in connection with the policy and the direction to leave dividends to accumulate. In other words, the dividends were left to accumulate unless requested from the insurer by the insured.
As of April 13, 1961, the due date of the premium on the policy in question, the six policies had accumulated dividends of $104.24 which were being held by the insurer. At that time the loan value of the policies was $7,449.94 and the outstanding indebtedness against the policies was $7,257.92, giving an excess loan value of $192.02.
Subsequent to May 13, 1961, the premium due April 13, 1961, not having been paid, the Jackson office of the insurance company asked its home office in Houston, Texas how the premium might be paid. On the assumption that the April 13, 1961, premium would be paid, the loan figures were recalculated as of about June 24, 1961, and the anticipated loan value was calculated to be $1,555.55, and the outstanding indebtedness to be $1,554.70.
Based on these calculations the Jackson office was advised that if this anticipated loan value of $.85 was to be used toward payment of the premium, a loan certificate Form 170 should be signed by the insured and submitted to the company together with the balance necessary for the payment of said premium.
On June 12, 1961, Miss Frances Burns of the Jackson office of the insurance company notified the insured by telephone that in order to reinstate the policy he would need to execute Form No. 170, submit the same along with the sum of $34.05, which amount plus the $.85 represented the amount of the premium. On June 23, 1961, Miss Burns, acting for the insurer, wrote insured a letter stating that a remittance in the amount of $34.90 or a signed loan form and a remittance of $34.05 was necessary in order that the premium might be paid, and that the time allowed for payment of premium had expired on June 13, 1961. On June 29, 1961, Miss Burns attempted to contact insured to remind him of the premium payment, but he could not be reached. On July 7, 1961, Miss Burns, acting for insurer, again called insured to remind him of the premium payment and to call attention to her letter of June 23.
Miss Burns, acting for the insurer, notified insured on August 1, 1961, that his policy had lapsed for nonpayment of the premium due April 13, 1961, and submitted to him a reinstatement form to be used if he desired to reinstate the policy.
On August 23, 1961, insured called the insurer's office in Jackson requesting that he be advised as to the status of all his policies with that company, and he was so advised. On the same date insurer through its Jackson office forwarded to insured a reinstatement form requested, and advised him as to the status of his other policies and the premiums due thereon.
The application for reinstatement was duly executed and forwarded on August 24, 1961, by U.S. Mail to the Jackson office of insurer. A check dated August 24, 1961, drawn on Deposit Guaranty Bank & Trust Company of Jackson, Mississippi, and payable to the insurer in the amount of $217.40 accompanied the application. Of this sum $69.80 was tendered in payment of premiums on the policy in question and for reinstatement of the policy, and the remainder for payment of premiums on three other policies, Numbers 14644751 -2 -3. The check was deposited by the Jackson office of the insurer about August 28, 1961, and the amount was received by said insurer.
*509 On August 28 the application for reinstatement was sent by U.S. Mail from Jackson to insurer's southwestern home office in Houston, Texas. This office was closed for business on September 2, 3, and 4, the latter Labor Day and a national holiday.
Insured was killed on September 2, 1961, in an automobile accident, the death occurring by accidental means as defined by provision of the policy. Without knowledge of the death, the Houston office of the insurer on September 3, 1961, wrote to the insured notifying him that a medical examination was required for reinstatement of the policy.
On August 30, 1961, the Jackson office of the insurer received a written request by insured that the dividends then due on the other policies be paid to him in cash. This request was forwarded to the Houston office. On September 5, 1961, without knowledge of the insured's death, the company mailed its check for the dividends then due on the policies.
The major question to be decided on this appeal is whether an insurer has the duty and the right to apply dividends due the insured, under the terms of one policy, to the payment of his premium on another policy issued to the same insured in order to prevent the lapse of the policy upon which the premium is due. We have not heretofore passed on this question. A majority of the courts that have passed on this question hold that in the absence of an express agreement the insurer is not obligated to apply dividends due on one policy for the payment of premiums due on another policy held by the same insured to prevent a forfeiture of the latter.
Appellant, trustee, relies on the case of National Life Insurance Company of Washington, D.C. v. Sparrow, 151 Miss. 387, 118 So. 195 (1928), wherein we held that the insurer, who had funds in his hand due the insured under the terms of a sick and accident policy, was obligated to apply those funds to the payment of the premium due on a life policy on the life of the insured to prevent a forfeiture. Sparrow, the insured, had a life insurance contract and a health and accident policy with the insurer. He became ill, and under the terms of the health and accident policy he was entitled to be paid sick benefits.
The insurer tendered him checks each week for the weekly benefits due under the policy, but the insured refused to accept the checks, claiming that he was entitled to larger payments. At the time of the attempted forfeiture of the life policy the insurer had sufficient funds in its hand that had accumulated in this manner to pay the premium due on the life policy. Under these circumstances this Court followed the rule announced in Mutual Life Insurance Company of New York v. Breland, 117 Miss. 479, 78 So. 362, L.R.A. 1918D, 1009 (1918), and held that since the insurer had funds in his hand belonging to the insured, it was its duty to apply those funds to the payment of the premium then in default.
Here we are concerned with dividends due under separate insurance contracts. The terms of all the policies are the same. The policies provided that upon written request any such dividend may be "(1) paid in cash, or (2) applied to the reduction of any premium then due; or, (3) applied to provide a paid-up addition to the face amount of insurance, or (4) left to accumulate to the credit of this policy with compound interest. * * *"
The insured had directed in writing that the dividends be left to accumulate. During the time the several insurance policies were in effect he had withdrawn dividends twenty-four times and had negotiated numerous loans on the policies. He evidently was well aware of his rights under the contract. After the premium was due on Policy No. 10449426, insured never made any request in writing or otherwise that the dividends on any of his other policies be applied to the payment of this premium.
Each of the policies had an automatic loan provision and a control provision. The automatic loan provision provided that in *510 the event of the default in payment of any premium due under such policy for more than thirty-one days, the premium would be charged against the policy as a loan provided the loan value then available exceeded the existing indebtedness.
Under the control provision insured was entitled "to receive any dividend and to obtain any loan, cash surrender value and any other benefit and value accruing hereunder, and to change the beneficiary, to assign this policy, and to exercise any other right or option conferred by this policy or allowed by the company." Thus it is apparent that the factual situation involved here is vastly different from the one involved in Sparrow, supra.
In differentiating this case from Sparrow the learned trial judge said:
Further discussing the collateral features of the conventional policy at any given time, that is the time the accumulated values will carry the policy without further premiums, is in direct ratio to the amount of "values" the policy has. If the company upon its own initiative should appropriate a portion of these values to pay the premium upon another policy, it might well, due to the vicissitudes of life, cause the loss of the policy, or of both policies. Furthermore, the taking of a portion of the values of a large policy upon the insurance company's own initiative, to pay the premium on a smaller one, might result in the loss of the larger policy. Also, the insured might determine that he had more insurance than he could carry due to a changed economic status, and would prefer to have the dividends in cash, dropping the policy, and thereby rearrange his insurance program to suit his present financial status. It might be that he would file suit to recover the amount of the premiums so appropriated by the company.
In all events, no cases have been quoted where values in cash or dividends of a conventional life policy have been appropriated by the insurance company to the payment of the premium on another policy to prevent a forfeiture. There is no use that an earned payment on an health and accident policy can be put except to pay it in cash or appropriate it to the payment of a premium to prevent a forfeiture.
His reasoning is supported by the great weight of authority in this country. In Judge v. Prudential Insurance Company of America, 321 Pa. 454, 184 A. 543 (1936), the court said:
Appellant's principal contention is that the trial judge erred in refusing to admit evidence of dividends which had accrued on decedent's other policies at the time this policy was forfeited. It is argued that plaintiff should have been permitted to show this, because under our decisions there was a duty upon defendant to apply funds in its hands belonging to the insured to keep his policies in force. The rule upon which appellant relies is well settled. Girard Life Ins., Annuity & Trust Co. v. Mutual Life Ins. Co., 97 Pa. 15; Mutual Life Ins. Co. of New York v. Girard Life Ins., Annuity & Trust Co., 100 Pa. 172; Matlack v. Mutual Life Ins. Co., 180 Pa. 360, 36 A. 1082; Sporrer v. German Roman Catholic Knights of St. George, 70 Pa.Super. 612; Holyland v. Protected Home Circle, 71 Pa.Super. 66. However, under the facts of the instant case, this principle of law has no application. In the cases cited the funds in the possession of the defendant insurers arose from transactions concerning the very policies sued upon, while here the dividends claimed to be in the hands of the company were a product of separate, distinct, and unrelated insurance contracts. This is a most material difference. In a situation of this kind there is no duty to apply such dividends to the payment of the premium of another policy unless there is a right to appropriate them for that purpose. Girard Life Ins., Annuity & Trust Co. v. Mutual Life Ins. Co., 97 Pa. 15, 27; Neel v. Heralds of Liberty, 71 Pa.Super. 136. The policy in suit does not mention other policies, and *511 gives defendant no right to apply dividends accruing on other policies to the payment of premiums of this policy. It provides in plain terms that only the dividends "accruing upon this policy" are available in payment of the premiums thereon. This is one of four options given to the policyholder for the disposition of dividends when actually declared. If the company had applied dividends earned upon other policies to the premium upon this particular policy, then properly a question might have arisen whether it had a legal right to do so under the terms of the policies of this decedent. Dividends are declared upon different classes of policies carried by an insured. It might well be of disadvantage to the company or even to the insured automatically to apply the dividends accruing upon a policy of one class to the payment of a premium upon a policy of an entirely different class of insurance. There might be different beneficiaries named in various policies. It seems plain, even in the absence of an express provision, that each policy should stand by itself, separate and distinct from any other policy. (184 A. at 544)
The policies here involved do not mention other policies, nor do they give the insurer the right to apply dividends other than directed by the insured.
We hold that by virtue of the provisions of the contract, and due to the facts and circumstances of this case, that the insurer was under no obligation and had no right to apply the dividends due on other policies to payment of premium due on the policy in question, in the absence of a request by the insured to so do.
Appellant urges that the insurer waived its right to insist upon a forfeiture and is estopped to assert that the policy was not in effect at the time of insured's death, and that the trial court was in error in failing to so hold. It is undisputed that the insured knew that the grace period had passed and that he was notified by letter on August 1, 1961, that the policy had lapsed for the nonpayment of premium. On August 24, 1961, he applied for reinstatement of the policy on the form prescribed by the insurer, and tendered his check for the two premiums then due. There was nothing in the conduct of the insurer which could have led the insured to believe that it had any intention of waiving its right to a forfeiture after August 1, 1961. He recognized that the policy had lapsed, and he so acknowledged when he executed the application for reinstatement. In order for estoppel by conduct to arise, there must be intentional false representation or concealment of facts, and the party affected thereby must be ignorant of the truth and must have been induced to act or fail to act because of the conduct of the other. United Timber and Lbr. Co. v. Hill, 226 Miss. 540, 84 So.2d 921 (1956); Mississippi State Highway Comm'n v. West, 181 Miss. 206, 179 So. 279 (1937); Davis v. Holt, 105 Ga. App. 125, 123 S.E.2d 686 (1961).
The factual situation here forms no basis for waiver or estoppel. The trial judge so held, and in doing so succinctly said:
All the constant communications the company had with the insured between these dates disclose a solicitude for the plaintiff and an extreme indulgence in his behalf. It would be a strange consummation to penalize the company for such indulgence and solicitude. It might follow for that reasoning that the company had forfeited the right to ever lapse the policy.
The trial judge decided that the facts in this case did not reflect that there was any undue or unreasonable delay in processing the insured's application for reinstatement of the policy, and we cannot say that the evidence does not support his finding in this regard. Furthermore, the time element alone is not determinative. An important point here is that by agreement of the parties to the contract there could be no reinstatement until the insurer had evidence of the insurability of the insured *512 satisfactory to it. The parties had a right so to contract. The fact that the insurer received the money tendered to pay the two premiums then due on the lapsed policy did not amount to a reinstatement of the policy, unless and until his application for reinstatement has been approved by the insurer as provided in the contract. Interstate Life & Accident Co. v. Pannell, 169 Miss. 50, 152 So. 635 (1934).
Although forfeitures are odious and disfavored, we are constrained to hold that under the law, the facts and circumstances of this case, the trial judge correctly held that the policy here in question had lapsed for failure to pay the premiums due thereon. For this reason this case is affirmed.
Affirmed.
ETHRIDGE, C.J., and JONES, PATTERSON and ROBERTSON, JJ., concur.