436 P.2d 606

Betty Marie SAHLIN, a widow, Appellant,

v.

AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a corporation, Appellee.

No. 8969–PR.

Supreme Court of Arizona, In Banc.

Feb. 1, 1968.

Rehearing Denied Feb. 27, 1968.

Langerman, Begam & Lewis, Phoenix, for appellant.

Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, for appellee.

STRUCKMEYER, Justice.

This case originated as an action to recover death benefits under a group disability insurance policy brought by Betty Marie Sahlin against the American Casualty Company. Summary judgment was granted in the trial court in favor of the American Casualty Company, denying death benefits. The Court of Appeals reversed. Opinion of the Court of Appeals, 5 Ariz.App. 126, 423 P.2d 897 is vacated.

Kenneth W. Sahlin, deceased husband of the appellant, was an employee of the United States Forest Service. The appellee insurance company issued a master group disability insurance policy to the "Director, Division of Personnel, Trustee for Forest Service Employees' Travel Plan," which was effective from June 15, 1961, to June 15, 1962. The policy insured employees of the Forest Service who elected to make application and pay the requisite premium. The premium was specified as $12.00 for the policy period for those paying their premium from June 15, 1961, to June 15, 1962. Appellee provided solicitation material and application forms for the Forest Service which, in turn, distributed them to its employees.

Kenneth W. Sahlin, in answer to the solicitation, applied for this group insurance, accompanying the application with his check for $12.00 dated August 2, 1961. The application and check were accepted by appellee, and a certificate of insurance was mailed to Kenneth Sahlin in August of 1961, *which provided insurance as of June 12, 1961.*

On June 25, 1962, Kenneth W. Sahlin was killed in an airplane accident while on duty with the Forest Service. This was a covered event under the terms of the group policy. Thereafter, on February 25, 1965, appellant herein brought suit on the policy for death benefits. Motions for summary judgments were made by both parties. The trial court granted summary judgment in favor of appellee insurance company on the ground that the policy had lapsed for nonpayment of the premium due on June 15, 1962.

Appellant urges the doctrine of equitable estoppel could be applied against the American Casualty Company arising out of the facts that the brochure prepared for the Forest Service employees by appellee contained an ambiguity as to the date of coverage which might have induced an ordinary prudent man to believe that when he sent in his premium he was receiving a full year of coverage from the date the check was sent in, not from the date of the master policy which specified coverage from June 15, 1961, to June 15, 1962. Accordingly, it is asserted that there was an issue of fact arising by reason of estoppel which should have been answered by the jury. Our inquiry is, therefore, limited solely to the question of whether appellee could be estopped under the particular facts

of this case to deny death benefits under the group disability insurance policy.

■■ The elements of equitable estoppel are these:

" * * * conduct by which one * * * induces another to believe and have confidence in certain material facts, which inducement results in acts in reliance thereon, * * * which cause injury to the party thus relying." Builders Supply Corp. v. Marshall, 88 Ariz. 89, 94, 352 P.2d 982, 985.

In this instance equitable estoppel requires that the appellant must show that the insured was excusably ignorant of the true facts and that he, therefore, could have justifiably relied upon the asserted ambiguity in appellee's brochure.

It is clear that appellant has not made a case for estoppel. Betty Marie Sahlin testified in a deposition that between June 15th and June 25th, 1962, she overheard her husband tell some friends that he had Forest Service insurance for $10,000. Even giving full credence to this testimony, it is not sufficient as a matter of law to raise estoppel. The deceased could not have been excusably ignorant that coverage would terminate on June 15, 1962, and hence, could not have justifiably believed that he was covered by the policy in question because exact knowledge of the expiration date was readily available to him.

In Hagin v. Fireman's Fund Insurance Co., 88 Ariz. 158, 353 P.2d 1029, 16 A.L.R.2d 1200, a beneficiary under an insurance policy was denied benefits on the ground (inter alia) that the insurance company notified her that it would no longer accept delinquent payments as it had in the past. In that case, we spoke of knowledge:

" 'Means of knowledge and knowledge itself are, in legal effect, the same thing where there is enough to put a party on inquiry. Knowledge which one has or ought to have under the circumstances is imputed to him. * * * In other words, *whatever fairly puts a person on inquiry is sufficient notice* where the means of knowledge are at hand; *and if he omits*

*to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained.* A person has no right to shut his eyes or his ears to avoid information, and then say that he had no notice; he does wrong not to heed the "signs and signals" seen by him. * * ' " 88 Ariz. at 162, 353 P.2d at 1032. (Emphasis supplied.)

■ In a group insurance policy it is usually considered that the primary contract is evidenced by the master policy issued to the employer. 1 Appleman, Insurance Law and Practice § 46; and see A.R. S. § 20–1402, subsec. 2. Thus, courts look first to the master policy in construing contracts of group insurance. 1 Appleman, Insurance Law and Practice § 46. The master policy stated that it was effective June 15, 1961, to June 15, 1962. It also provided that certificates of insurance would be issued to the employees who elected to obtain the coverage and that coverage would terminate on the termination date of the policy or upon nonpayment of the renewal premium.

A.R.S. § 20–1402, subsec. 2, requires that the insurer furnish to the policyholder certificates of insurance for delivery to each employee or member of the insured group setting forth in summary form a statement of the essential features of the insurance coverage of the employee or member. Kenneth W. Sahlin received such a certificate of insurance. *On its face it stated that the effective date of the policy was June 15, 1961,* and that nonpayment of premium would terminate coverage.

Moreover, depositions established that the insurance company undertook to mail renewal notices to all Forest Service employees who had taken out the insurance. A renewal notice should have been mailed to Kenneth Sahlin on or before May 21, 1962. Such a renewal notice was found by appellant among other unpaid bills of the deceased Kenneth W. Sahlin at his office. The notice expressly stated that coverage would terminate on June 15, 1962, un-

less the renewal premium was paid. The language of the master policy, the certificate and the renewal notice all made it clear that the coverage would terminate June 15, 1962, unless renewed. Kenneth W. Sahlin was charged with the knowledge which a reasonably prudent man would have acquired in the exercise of his affairs.

■ Appellant argues that the brochure provided for a $12.00 "annual" premium; that the word "annual" means 365 days and hence Sahlin could have believed that he had coverage for 365 days from the date of his application and payment of premium. But we think that the word "annual" as used in the application plainly has no significance as to the *date* when the premium was to be paid. It only specifies the *basis* of the premium.

> "The word 'annual' means 'yearly' or 'once in a year.' But the word 'annual' does not signify what time in a year. The words 'annual premiums,' as used in the policy, then, has reference to the rate at which the premiums were to be computed, and not to the specific date of the year." Rolerson v. Standard Life Insurance Co., 244 S.W. 845, 846 (Tex.Civ. App.1922).

We hold that "annual" means once a year, not necessarily 365 days from a given date. But even assuming a reasonable man could have been confused by the use of the word "annual" there could be no justifiable reliance thereon in the light of the plain language of the certificate and renewal notice. The trial court was compelled, as a matter of law, on these facts to decline to accept appellant's theory of estoppel. There was no question for the jury and summary judgment was proper.

Appellant alternatively urges that the insurance remained in force for thirty days following June 15, 1962, without payment of any premium by reason of an alleged statutory grace period. She relies on three statutes in support of her argument. They are A.R.S. §§ 20–1203, 20–1259 and 20–1347.

By A.R.S. § 20–253, disability insurance is defined as:

> " 'Disability insurance' is insurance against *bodily injury, disablement or death by accident or accidental means,* or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto." (Emphasis supplied.)

The policy here under consideration is a. group disability policy. And see also A.R.S. § 20–1401.

■ A.R.S. § 20–1203 applies only to life insurance and annuity contracts. See A.R.S. § 20–1201. A.R.S. § 20–1259, by its express terms, applies only to group life policies. A.R.S. § 20–1347 provides for a grace period in disability insurance policies, but this provision is expressly rendered *inapplicable to group disability policies* by A.R.S. §§ 20–1405 and 20–1341.

■ No grace period exists unless there is either a statutory provision or a provision in the contract of insurance. Couch on Insurance, 2d, § 32:119. The policy itself does not provide for a grace period. Arizona statutes do not require a grace period; therefore, none may be read into the policy.

Judgment affirmed.

McFARLAND, C. J., UDALL, V. C. J., and BERNSTEIN, and LOCKWOOD, JJ., concur.