457 P.2d 736

**Willis R. IRWIN and E. Laura McClendon, Appellants,**

**v.**

**PACIFIC AMERICAN LIFE INSURANCE COMPANY, an Arizona corporation, formerly known as Pacific Southwest Life Insurance Company, an Arizona corporation, Appellee.**

**No. I CA–CIV 572.**

Court of Appeals of Arizona.

Aug. 11, 1969.

Jennings, Strouss, Salmon & Trask, by Timothy W. Barton, Phoenix, for appellants.

Stockton & Hing, by Carroll E. Dietle II, and Robert O. Hing, Phoenix, for appellee.

KRÜCKER, Judge.

Willis R. Irwin and Laura McClendon, sued Pacific American Life Insurance Co. to recover the cash surrender value of their three paid-up annuity policies, having a face value of $10,000 each. The insurance company moved for summary judgment in its favor, the motion was granted and the plaintiffs appeal from the judgment entered thereon.

In reviewing the granting of a motion for summary judgment, the record must be construed in a light most favorable to the party opposing the motion, here, the plaintiffs. Phoenix Jewish Community Council v. Leon, 102 Ariz. 187, 427 P.2d 138 (1967); Mermis v. Weeden & Co., 8 Ariz.App. 166, 444 P.2d 524 (1968).

On April 22, 1963, the insurance company was placed in receivership under the delinquency provisions of A.R.S. §§ 20–611 to 20–645. On June 25, 1963, the receiver issued a notice to possible creditors, requiring that all claims against the company be properly submitted within four months. Plaintiff-Irwin, a resident of California, was the owner of three annuity policies issued by the company. Each policy provides that the owner can surrender the policy any time prior to annuity commencement and receive its cash value less indebtedness. Plaintiff-Irwin assigned one policy as collateral security to plaintiff-McClendon. In March, 1965, some considerable time after the four-months period for filing claims, plaintiffs filed proof of their claim to cash in the policies in the receivership proceedings and it was rejected. In April, 1965, the court ordered the rehabilitation terminated. The company was reorganized and given a new name, the assets were transferred and business resumed. The court ordered that all claims and contracts not specifically approved by the court were forever barred. However, pursuant to stipulation of the parties, the court ordered that certain claimants, among them the plaintiffs, be allowed to pursue their claims against the new company directly. It ordered that in the event the parties were

unable to agree on settlement of claims, a claimant could file a separate action against the new company in superior court within one year from the date of the termination of the receivership proceeding.

Soon after this order was entered, a series of letters commenced between counsel for the parties, seeking a settlement. By December 31, 1965, the defendant's counsel, in a letter to plaintiffs' counsel, stated they were still investigating the claim and that the delay was in part due to the retention of pertinent records by the U.S. Attorney in California. In May, 1966, plaintiffs' new Arizona counsel was requested to inquire into the matter and again the insurance company said they would have to look into the matter; no mention was then made that the one-year limit had expired. Finally, on August 8, 1966, the subject action was commenced. Defendant interposed the limitation period. Motion for summary judgment was granted and plaintiffs appeal.

Two allegations of error are posed:

(1) The court had no jurisdiction to set the one year limit.

(2) Defendant is estopped to assert the limitation by its action and a material issue of fact was presented to this effect.

Does the court have jurisdiction to set a one year limitation upon the filing of claims in a rehabilitation proceeding under A.R.S. §§ 20–611 to 20–645?

A.R.S. §§ 20–611 to 20–645 is Arizona's Rehabilitation and Liquidation Act. Its provisions establish exclusive original superior court jurisdiction over all delinquency proceedings. Delinquency proceedings constitute the sole method of liquidating, rehabilitating, reorganizing or conserving an insurer. § 20–612.

Pursuant to this chapter, delinquency proceedings were instituted against the defendant company because it was insolvent and had wilfully violated its charter. The trial court ordered the company placed in receivership and that the receiver take the necessary steps under the Act to reha-

bilitate, conserve or liquidate the assets of the company.

A plan for rehabilitation was eventually formulated and approved. Thus on April 14, 1965, the court ordered the rehabilitation proceedings terminated and the company resumed business. The one year limitation period for plaintiffs' claim was set at this time.

The ultimate question is whether Arizona's Financial Provisions authorize the court to totally and/or partially bar claims in rehabilitation proceedings as distinct from that expressly provided for in liquidations, § 20–640. In the instant case, the question, more narrowly, is whether the court could set a one year limitation period on plaintiffs' claim.

A reading of the Uniform Insurers Liquidation Act, see A.R.S. § 20–631, indicates that there was no intention that rehabilitations, liquidations or reorganizations be considered substantially different, as evidenced by the insisted and continued use of the word delinquency proceedings. "Delinquency" covers both rehabilitation and liquidation. For example, § 20–628 subsec. B states and assumes time limits can be set:

"All claims filed in this state [in delinquency proceedings] shall be filed * * * on or before the last date of filing as specified in this article."

A recent article, Rehabilitation and Liquidation of Insurance Companies, Delinquency Proceedings in Insurance, Ins. L.J. 79 (1967), maintains that the purpose of the Uniform Act is to create ultimate flexibility in all the efforts at "house cleaning" of insurance companies, with the hope that if new capital is brought into a company, whatever needs to be done to assure rehabilitation can be done. A.R.S. § 20–620 particularly states, in an Arizona addition to the Act:

"A. *An order to rehabilitate* a domestic insurer *shall direct the director* forthwith to take possession of the property of the insurer and to conduct the business thereof, and *to take such steps toward removal*

*of the causes and conditions which have made rehabilitation necessary as the court may direct."* (Emphasis supplied)

Obviously if one of the causes of a company's financial distress is excessive debts, they would have to be disposed of in order to accomplish the article's purpose and to assure the new financers that the company would not again sink into debt. More concretely A.R.S. § 20–614 provides:

> "B. *The court may at any time during a proceeding under this article issue such* other injunctions or *orders as is deemed necessary to prevent* interference with the director or the proceeding, or waste of the assets of the insurer, or *the commencement or prosecution of any actions,* * * *."* (Emphasis supplied)

Defendant presents an interesting case in support of its position, Texas & P. Ry. Co. v. Johnson, 76 Tex. 421, 13 S.W. 463 (1890). Railroad property placed in receivership was released. At that time, the railroad contended, the court released the company from all liability for claims not established during the receivership. Plaintiff, after the release of assets, sued the railroad for damages for a negligent act during receivership. The court held that there was no power to fix a period barring such actions nor power under general principles to bind, in a receivership order, a party not yet before the court.

We do not believe that this case bears on the instant one. *Johnson* relates to a company's liability for a receiver's negligence during his term and this raises a different question than liability for claims after receivership, the purpose, of which was in part, their settlement. 75 C.J.S. Receivers § 187. Also, the receivership in *Johnson* was not established under rehabilitation principles nor statutes such as ours. In *Johnson,* the receivership was apparently set up as a means of making improvements on the road, unfettered with certain bonded indebtedness. The court ultimately rested its decision on the concept that strangers to an action cannot be bound.

In the instant case, plaintiffs are not strangers to the action. In fact, they actively participated in the proceedings which resulted in the one year limitation, and joined in the stipulation thereto. We do not believe there is any "jurisdictional" defect in the court's barring or limiting claims against a rehabilitated insurance company under the Arizona statutes. The statutory powers given are broad, as indicated, and A.R.S. § 20–631 expressly gives the Uniform Acts' concepts legislative approval. We also see no defect in applying that power to his case, as plaintiffs have not claimed lack of notice of the limitation period. We therefore conclude that the superior court has jurisdiction under A.R.S. §§ 20–611 to 20–645 to bar or limit actions when necessary to fulfill the purpose of a delinquency proceeding.

Plaintiffs lastly contend that it was error for the trial court to fail to submit the question of estoppel to the trier of fact. They argue that the two affidavits and letters attached thereto presented a material issue of fact on whether defendant is estopped to assert the limitation period and therefore summary judgment against plaintiffs was improper.

In Arizona, estoppel in pais can bar a party's right to assert the statute of limitations. Waugh v. Lennard, 69 Ariz. 214, 211 P.2d 806 (1949). The elements of estoppel are three in number: 1) acts inconsistent with the claim later relied upon, 2) action by the adverse party on faith of such conduct, and 3) injury resulting from repudiation of said conduct. Holmes v. Graves, 83 Ariz. 174, 318 P.2d 354 (1957); Herman Chanen Construction Co. v. Northwest Title and Terrazzo Company of Montana, 6 Ariz.App. 490, 433 P.2d 807 (1967).

The letters and affidavits presented by the plaintiffs in opposition to motion for summary judgment disclose the following facts. Timothy Barton's *affidavit states* that he, as attorney representing plaintiffs, contacted the insurance company's counsel, Mr. Hing, in May, 1966, after expiration of the one year period, and Mr. Hing said

200

it would be necessary for him to check the file before making a comment. Mr. Hing did not at that time assert the time limitation. Gordon Thompson's affidavit, as former attorney for plaintiffs, states that he and Mr. Hing had discussed the claim several times earlier and that the claim was never rejected. Each time he was informed that the company was investigating the matter. The letters confirm the affidavits and indicate that in December, 1965, the delay was due in part to the U.S. Attorney's possession of certain records.

Plaintiffs contend that defendant's representation that investigations were being conducted and its failure to reject their claim presents sufficient evidence to establish a prima facie proof of estoppel. We disagree.

In Annot., 24 A.L.R.2d 1413, the authors present many of the cases in this area of estoppel to rely on statute of limitations. Plaintiffs also cite the following cases as authority for application of the doctrine of estoppel in the instant case. In McCloskey & Co. v. Dickinson, 56 A.2d 442 (D.C. Mun. App. 1947) an employee seeking overtime pay was told by his employer that they were simply waiting an approval "so payment could be made," and that the local division had approved the payment. The court held this implied that the claim was accepted, and that only a formality remained in making payment. In Industrial Indemnity Co. v. Industrial Accident Comm., 115 Cal.App. 2d 684, 252 P.2d 649 (1953) a personal injury victim was held to have been lulled into a sense of security by an insurance company's agent expressly telling him not to get an attorney and that this matter would be taken care of. And in Lagomarsino v. San Jose Abstract and Title Ins. Co., 178 Cal.App.2d 455, 3 Cal.Rptr. 80 (1960) an insured orally presented a claim to his insurance agent who told him the company wanted to help him with the problem and that he would check and send the claim in. Recovery was allowed even though no written claim was filed because

the company for five years accepted the oral claim.

■ Our reading of these cases and many others in this area reveals that in order to establish a prima facie case of estoppel there must be some conduct on the part of the "estopped" party which a person could reasonably interpret to mean that his claim was being accepted. Chandlee v. Shockley, 219 Md. 493, 150 A.2d 438 (1959) (Personal injury victim told by insurer that claim would be settled and not to file suit, estoppel allowed); MacKeen v. Kasinskas, 333 Mass. 695, 132 N.E. 2d 732 (1956) (Adjuster told personal injury victim he had no need to get a lawyer, company would take care of the bills, estoppel allowed); McLaughlin v. Blake, 120 Vt. 174, 136 A.2d 492 (1957) (Personal injury victim told there was no need for attorney and was expressly requested to delay suit, estoppel allowed); Burke v. Blair, 349 S.W.2d 836 (Ky. 1961) (Personal injury victim and insurance attorney calculated days and amount of claim, but no offer was made, estoppel not allowed); Knight v. Lawrence, 331 Mass. 293, 118 N.E.2d 747 (1954) (Personal injury victim told by insurance agent "Don't worry, we are going to take good care of you," three times and not to do anything, they would settle, held estopped); Schaefer v. Kerber, 105 Cal.App.2d 645, 234 P.2d 109 (1951) (Personal injury victim given to believe only amount of claim was in dispute, not liability, held estopped); The reasoning of these cases is in line with the Arizona doctrine, particularly as to the requirement that the "estopped" party's conduct be inconsistent with his later position.

■ We do not believe that mere investigation is inconsistent with a later allegation denying the claim presented. Nor do we believe that Mr. Hing's continued reiteration that the company was investigating could reasonably lead anyone to believe that his claim was being accepted. The plaintiffs' attorneys in this matter were

aware of the one year limitation period and had expressly agreed to it by stipulation. These were not innocent, deceived laymen.

This holding may allow a sophisticated attorney to exercise "stall" tactics and at the same time say little which would so indicate. But we believe the burden is still, as initially, on the party asserting estoppel to show such is the case, or to at least institute an action to cover the possibility. Equity aids the vigilant, not those who slumber on their rights.

Judgment affirmed.

MOLLOY, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120 subsec. E.