461 P.2d 520

**STATE FARM MUTUAL AUTOMOBILE INS. CO., Appellant,**

v.

**Carol M. ROBISON, Appellee.**

**No. 2 CA–CIV 641.**

Court of Appeals of Arizona.
Division 2.
Nov. 25, 1969.
Rehearing Denied Jan. 5, 1970.
Review Denied Feb. 17, 1970.

Chandler, Tullar, Udall & Richmond, Tucson, for appellant.

Rees, Estes & Browning, Tucson, for appellee.

HATHAWAY, Judge.

Several questions related to an insurance policy are presented for review, but our disposition of the coverage question renders moot the additional questions, i. e. no coverage, no damages.

In March, 1963, Carol Robison and her husband, while living in Portland, Oregon, purchased an automobile liability policy from the appellant, State Farm. The policy provided coverage for bodily injury and property damage liability, comprehensive, deductible collision, emergency road service and uninsured motorist coverage. Premiums were payable semi-annually on September 12th and March 12th of each year. The Robisons were advised by the State Farm agent in Portland that there would be an additional 10 day period in which they could pay the premiums and have the policy continue.

Mrs. Robison subsequently moved to Arizona and a new policy was issued, which, by its terms, would have expired March 12, 1964. Mrs. Robison was advised that Mr. Albert Young was her State Farm agent in Tucson, Arizona. On May 22, 1964, she was involved in an automobile accident. Although the March 12, 1964 premium due date was extended to May 18, 1964, because of a computer error, no premium was paid prior to May 18th. Mrs. Robison, however, knew that if she paid the premium within 10 days after May 18, 1964, (at or before midnight of May 27, 1964) coverage would continue. When the accident occurred on May 22, 1964, she had the check for the premium payment in an envelope in her purse and had planned to mail it. Following the accident, she was hospitalized for six days, being unconscious the first three days. On May 25th, Mrs. Robison requested her mother to phone the State Farm agent Young. Mrs. Robison testified:

"She said she called Mr. Young and he said he would come out to the hospital to see me. I kept the envelope for him in my purse, figuring that I would give it to Mr. Young when he came to the hospital."

On May 27th, Mr. Young not having come to the hospital, Mrs. Robison again requested her mother to phone him. She testified:

"Q Tell me what your mother said on or about the 27th?

A She said that she called Mr. Young again because he didn't come out to the hospital to see me and asked him about my coverage. He said I didn't have any automobile coverage.

Q What did you do with the check in the envelope then?

A I figured since the State Farm agent told me I had no coverage, it was no sense mailing it in to him; so, I destroyed it."

On cross examination, Mrs. Robison admitted that during the period between May 25th and May 28th, the date she left the hospital, she and her mother had several conversations about insurance and that she was aware of the fact that the premium had been due on May 18th. Mrs. Robison's mother testified as to her telephone conversations with Mr. Young, the State Farm agent. As to the first conversation:

"A  I told him that I was Louise; that Carol Robison was involved in an automobile accident. He said, 'Oh, yes, where is she? I will go out to see Carol.' I said, 'Thank you.' I assumed he was going out right away."

She testified that when she returned to the hospital she reported the conversation as follows:

"Yes, I told Carol that he said he would be out in the afternoon."

She also testified as to a conversation with Mrs. Robison about the premium check:

"Yes, she [Mrs. Robison] took an envelope out of her purse. 'I have the payment here.' And said, 'I wish he would get it. No point in that. I will give it to him when he comes.' "

As to her second conversation with Mr. Young, she testified:

"Q  What did Mr. Young say to you and you say to him on that second telephone call?

A  He said he hadn't been out to see Carol because she didn't have coverage and that he was contacting the home office."

Subsequently, on June 9, 1964, a State Farm claims representative took two statements from Mrs. Robison, one concerning the details of the accident and the other concerning facts pertinent to coverage. The representative additionally obtained a police report and at a subsequent date obtained a statement from Mr. Young. (Mr. Young, at the time of trial, was deceased.) Before taking Mrs. Robison's statements, the representative did not obtain from her a non-waiver agreement although the State Farm manual, in pertinent part, provided:

"Non-waivers are required in every case in which there is a question of coverage. If the field claims representative takes progressive action to investigate the merits of the case, or to settle a case, after he, or the company, has notice of a coverage question, that occasion might constitute a waiver if a non-waiver has not been secured."

Mrs. Robison's claim was predicated on the theory of estoppel. Initially, we consider it necessary to clarify the legal effect of the following provision in the expiration notice sent to the insured:

"Payment within 10 days after due date will reinstate your policy as of the policy due date."

It is not disputed that it was the policy of the company to provide continuous protection if the premium was paid within this 10 day period. Although Mrs. Robison's counsel refers to this 10 day period as a "grace" period we believe the following statement in McClure v. State Farm Mutual Automobile Insurance Company, 113 Ga.App. 467, 148 S.E.2d 475 (1966) is apposite:

"We think this position is untenable. There is no provision for a 'grace' period in the policy. The policy of the company to provide continuous protection if the premium was paid within 10 days after the expiration date of the policy constituted an offer by the insurance company to the insured which required acceptance of the insured by the actual payment of the premium, or part thereof, possibly, in order to constitute a contract. There is no showing in this case whatsoever that the premium was paid or tendered to the insurance company within the 10 day period in which continuous protection could be procured. Neither is there any fraud alleged against the insurance company, nor any other fact, which in law could be said to have deterred the plaintiff from paying the preimum within the said 10 day period.

The rule which applies to an event's occurring within a 'grace' period provided in an insurance policy does not apply in such a case as this where there is no binding contract on the part of the insurance company to pay a loss occurring within the 'grace' period. The situation in this case is that the insurance company offered the insured the opportunity to buy and pay for protection during the 10 day period by the actual payment of the premium. This offer the insured did not accept and it follows that the insurance company was not obligated to pay the loss under count 1." 148 S.E.2d at 477.

■ No grace period exists unless there is either a statutory provision or a provision in the contract of insurance. Sahlin v. American Casualty Company of Reading, Pennsylvania, 103 Ariz. 57, 436 P.2d 606 (1968). Here, the policy did not provide for a grace period and the Arizona statutes require none. Mrs. Robison's loss, therefore, cannot be construed as one occurring during a "grace" period.

■ Was the insurance company estopped to deny that the policy had lapsed for nonpayment of premium? The elements of estoppel are: *conduct* by which one induces another to believe and have confidence in certain material facts, which inducement results in acts in reliance thereon, justifiably taken, which causes injury to the person thus relying. Sahlin, supra; Builders Supply Corporation v. Marshall, 88 Ariz. 89, 352 P.2d 982 (1960).

■ In considering conduct of the insurer and its agents upon which the claim of estoppel is predicated, we note that the insurer had accepted a late payment in 1963. While custom or a course of dealing may furnish the basis for waiver and estoppel, Couch on Insurance 2d., § 32:369, the acceptance of one overdue premium does not establish a custom. McFarland v. Farm Bureau Mutual Auto Insurance Company, 201 Md. 241, 93 A.2d 551 (1953); 43 Am.Jur.2d., Insurance § 1140. Next, Mrs. Robison's reliance on Mr. Young's

purported promise to visit her in the hospital is unsupported by evidence that he was informed that she desired to tender the premium payment to him. If the insurer had established a custom of sending its agent to collect premiums, such failure to collect by the agent may prevent a lapse of a policy for nonpayment of premium. Couch on Insurance 2d., § 32:384. Since the policy required payment of the renewal premium before the expiration date, Mrs. Robison's interpretation of Mr. Young's contemplated visit to the hospital as a promise to come for the premium was unwarranted and insufficient justification for an estoppel. 43 Am.Jur.2d., Insurance § 1125.

■ Mrs. Robison contends that Mr. Young's statement to her mother, during the 10 day period, that there was no coverage operated to work an estoppel. We might point out, at this juncture, that Mr. Young's statement, based upon the facts known to him, was correct. The insurance premium, due May 18th, had not been paid, hence the policy had lapsed. Furthermore, Mrs. Robison knew that payment of her premium within the 10 day period would reinstate the policy as of the due date, May 18th. Under these circumstances, Mrs. Robison cannot claim to have been misled. See Rice v. California-Western States Life Insurance Company, 21 Cal. App.2d 660, 70 P.2d 516 (1937); Sahlin, supra; Compare Guerin v. California Western States Life Insurance Company, 229 Cal.App.2d 325, 40 Cal.Rptr. 344 (1964).

■ Mrs. Robison relies heavily on the conduct of the insurer's claims representative, who took two statements from her and obtained a police report concerning the May 22nd accident, particularly in view of his failure to follow company policy to first obtain a non-waiver agreement. Judicial abhorrence of forfeitures prompts courts to liberally construe conduct of an insurer in favor of finding a waiver of a forfeiture provision, thereby estopping the insurer from asserting such defense. Occidental Life Insurance Company v. Jacob-

**46**

son, 15 Ariz. 242, 137 P. 869 (1914); see Annotation 85 A.L.R.2d 1410. However, in order to constitute waiver of a forfeiture provision for nonpayment of premiums, there must be some conduct in recognition of the continued validity of the policy as a binding obligation upon the insurer, John Hancock Mutual Life Insurance Company v. Tuggle, 10th Cir., 1962, 303 F.2d 113; Deposit Guaranty National Bank v. Prudential Insurance Company, 195 So.2d 506 (Miss.1967); Lievers v. National Insurance Underwriters, 257 Minn. 268, 101 N.W.2d 817 (1960).

We have recently held that there must be some conduct on the part of the "estopped" party which a person could reasonably interpret to mean that his claim was being accepted and that mere investigation does not provide the requisite basis for invocation of the doctrine of estoppel. Irwin v. Pacific American Life Insurance Co., 10 Ariz.App. 196, 457 P.2d 736 (1969). We find nothing in this conduct which recognized the policy or which served to mislead Mrs. Robison or result in any disadvantage to her. See Simmons v. Motors Insurance Corporation, 213 Miss. 165, 56 So.2d 480 (1952).

■ Mrs. Robison did not tender the insurance premium until June 15th, more than two weeks after the 10 day period had expired. Her excuse for the tardy tender is the fact that Mr. Young, in his second phone conversation with her mother, stated that she had no coverage. It is true that tender is excused where it is reasonably plain that if made, it would be useless. 52 Am.Jur., Tender, § 4. The circumstances here, however, cannot be construed to excuse tender. Mr. Young's statement, correct on its face, does not indicate that tender by Mrs. Robison of the premium would have been futile, although she so interpreted it.

Since Mrs. Robison failed to sustain her burden of proof as to all the elements of estoppel, she was not entitled to the benefit of the doctrine. Nichols v. Elkins, 2 Ariz. App. 272, 408 P.2d 34 (1966). The trial court therefore erred in declaring that she had coverage at the time of the accident in question.

Judgment reversed with directions to enter judgment for the appellant in accordance herewith.

HOWARD, J., and JACK G. MARKS, Judge of the Superior Court, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.

On Motion for Rehearing

■ The court has considered the grounds urged by the appellee in her motion for rehearing and, although finding no basis for granting the motion, considers it appropriate to comment on the argument advanced on page thirteen thereof wherein reference is made to Exhibit 1 (insurance policy).

Examination of said exhibit reveals that, contrary to appellee's contention, the insurance policy *does* contain a provision for forfeiture in the event of non-payment of premium:

"After the named insured has been continuously insured hereunder for sixty days, as to each coverage so carried, the company agrees:

(1) to continue such coverage in force until the expiration of the current policy period, * * *."

*   *   *   *   *   *

"These agreements shall be void and of no effect:

(a) if the premium for the policy is not paid when due." (Page 9, insurance policy)

Since the insurance policy provided for forfeiture no further action by the insurer was required. See: 6 Couch on Insurance 2d Sec. 32:65 et seq.

It is therefore ordered that the motion for rehearing be, and it hereby is, denied.