444 P.2d 524

Jane Watson MERMIS and Meade & Co., Inc., Appellant,

v.

WEEDEN & CO., Incorporated, Appellee.

No. 1 CA-CIV 575.

Court of Appeals of Arizona.
Aug. 20, 1968.
Rehearing Denied Sept. 27, 1968.

Alan Philip Bayham and Jerome S. Gutkin, Phoenix, for appellant.

Shimmel, Hill, Kleindienst & Bishop, by James B. Rolle III, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal by Jane Watson Mermis from a summary judgment against her in favor of appellee Weeden & Co., Incorporated, in a suit seeking to establish in Arizona a judgment entered by default against appellant in the Civil Court of the City of New York.

The question to be determined is whether the trial court erred in granting summary judgment. The main issue revolves around whether the New York Court had sufficient jurisdiction over appellant, who was a resident of Arizona, to render judgment against her.

Mrs. Mermis, residing in Tempe, Arizona, was the owner of a stock certificate representing 100 shares of Union Electric Company. She endorsed this certificate in blank and gave it to her husband, William Mermis, Jr. The stock certificate in question was sent to Meade & Co. for sale. On April 23, 1963 Weeden & Co. purchased these shares of Union Electric Company $10 par common stock from Meade & Co. for a gross purchase price of $5,412.50. This sale did not involve the New York Stock Exchange. The sale was made over the telephone between an employee of Weeden & Co. at its office at 25 Broad Street, New York, N. Y., and a representative of Meade & Co. which then had offices at 27 Williams Street, New York, N. Y. During the sale Meade & Co. represented to Weeden & Co. that it was acting as agent for an undisclosed principal in making the sale. It is the custom in the financial community in New York to follow what is known as the "4-Day Delivery Plan". Under this plan sales are settled on the fourth full business day after the transaction takes place. Accordingly, the fourth full business day after April 23, 1963 was Monday, April 29, 1963. On that day Union Electric split its $10 par common stock on a two-for-one basis; however because Meade & Co. failed to deliver on April 29 as it should have according to the custom, Union Electric sent the 100 shares of the new $5.00 par common stock to Mrs. Mermis who was the owner of record at the time of the split. Meade & Co. delivered the original 100 shares of stock in its possession to Weeden & Co. on May 3, 1963, along with a "due bill" which stated that the additional 100 share "dividend" would be "payable when collected of the Company". Weeden & Co. accepted the 100 share certificate and the due bill for the additional 100 shares on May 3, 1963 and at the same time made payment of the agreed sales price of $5,412.50 by a certified check.

At about this time Meade & Co. was found to be in violation of the Security & Exchange Commission rules and pursuant to an injunction ceased doing business. It was then put into the hands of a receiver. Weeden & Co. thereafter undertook inquiries to ascertain the whereabouts of the new 100 share certificate issued by Union Electric, and in due course learned that it had been delivered to Mrs. Mermis and was still registered in her name. After Weeden & Co. failed to receive satisfaction in obtaining the shares, a legal action was commenced by it against Meade & Co. and Mrs. Mermis in the Civil Court of the City of New York for the County of New York. Service was had on Mrs. Mermis in Arizona under the New York "long-arm" statute. Mrs. Mermis did not appear and defend against the action and a default judgment was taken against her for the

amount of the new stock certificate. This New York judgment forms the basis of this lawsuit.

In the receivership of Meade & Co. in New York there appeared a Proof of Claim document which bears Mrs. Mermis' signature. This document bears a jurat by a notary to the effect that Mrs. Mermis swore to the truth of the statements contained in the claim. With reference to the stock, the claim stated that Mrs. Mermis "executed certificates in blank and forwarded to Meade & Co., attention of Mr. Harold Rosenberg". Although admitting the signature was hers, Mrs. Mermis denies that she ever went before a Notary Public and executed the alleged proof of claim or that she sent it in for collection to the receiver.

■■■ The "long-arm" statute under which New York attempted to secure jurisdiction over Mrs. Mermis is Section 302 of the New York Civil Practice Law and Rules, the pertinent part of which provides:

"(A) Acts which are the basis of jurisdiction. A court may exercise personal jursidiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if in person or through an agent, he: 1. * * * transacts any business within the state; or * * *" Cited as CPLR § 302(a), ¶ 1

In interpreting this law we would be bound by the interpretation given to it by the New York Court. Catchpole v. Narramore, 102 Ariz. 248, 428 P.2d 105 (1967). The above-mentioned statute was to become effective September 1, 1963. The sale of the stock in question occurred the previous April of 1963. The first question, therefore, would be to determine whether the act applies to the instant case. We believe so. The New York Court has held that the statute is procedural and one which merely

makes available an additional forum to a plaintiff to enforce whatever substantive right he might have against a defendant, and, as such, may be applied retroactively. William Rand, Inc., v. Joyas De Fantasia, S.A., 41 Misc.2d 838, 246 N.Y.S.2d 778 (1964); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

■■■ By the enactment of this "long-arm" statute the New York Legislature expressed an intention to authorize the expansion of the jurisdiction of the New York courts to the limits allowed by International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) as augmented by McGee v. International Life Insurance Co., 355 U.S. 220, 2 L.Ed.2d 223, 78 S.Ct. 199 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). These cases established and defined the notion of "minimum contacts" allowing jurisdiction to be maintained over nondomiciliaries doing business within the state. What constitutes minimal contacts must be determined from the fact situation of the individual case. Engelhardt v. Shields & Co., 50 Misc.2d 7, 269 N.Y.S.2d 238 (1966).

In considering whether or not New York has jurisdiction over nondomiciliaries, the courts have been cautious in extending their jurisdiction over the entire field of jurisdiction permitted under modern constitutional doctrines. See A. Millner Co. v. Noudar, L.D.A., 24 A.D.2d 326 at 329, 266 N.Y.S.2d 289 at 294 (1966); McLaughlin, 7B McKinney's Consolidated Laws of N. Y., 1967 Cumulative Pocket Part, page 81. A landmark case in the construction of CPLR § 302 is Longines-Wittnauer Watch Co. v. Barnes & Reinecke, supra. The opinion consisted of a triology of cases wherein the "long-arm" statute was being questioned by nonresident defendants. In the opinion, the court exhibited caution in exercising the "long-arm" statute by examining into the facts of each individual case carefully to find out all the connections the parties had with the New York jurisdiction. The

court would not say that simply because the transaction had some connection with New York, that New York would exercise its jurisdiction over the parties. For example, in connection with the first case (breach of warranty), the facts examined by the court included the place where substantial preliminary negotiations were held and where the supplementary agreements were initiated, as well as where the bulk of the work was to be done on the contracts involved. The court then concluded that:

> "* * * Not only did the contract upon which the suit is based have 'substantial connection' with New York (citation omitted) but the appellant's 'contacts' with this State were such 'that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' (citation omitted) Nor may it be said that the limits indicated by Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, supra, have been exceeded, for it is clear, to cull from the court's opinion in that case (p. 253, 78 S.Ct. p. 1240), that the appellant 'purposefully avail[ed] itself of the privilege of conducting activities within * * * [this] State' and thereby 'invok[ed] the benefits and protections of its laws.'" 15 N.Y.2d 443 at 458, 261 N.Y.S.2d 8 at 19, 209 N.E.2d 68 at 76.

In the second case (tort action) the court ruled against expanding the scope of the act and in the third case (tort action) involving the sale of a hammer in New York which caused an injury in Connecticut, the court likewise held the "long-arm" statute not applicable. A reading of the Supplementary Practice Commentary to CPLR § 302 by Joseph M. McLaughlin, found in the 1967 Cumulative Annual Pocket Part to Book 7B of McKinney's Consolidated Laws of New York would indicate that the legal writers are of the opinion that the Longines case has set up a "purposeful activities" test upon which jurisdiction depends. Therein it is stated that:

> "* * * In the quest for the 'purposeful activity' by the defendant which the Court of Appeals mandated in its Longines opinion of last year (see 1965 Practice Commentary), the courts have been applying a relatively stringent test. * * *" At p. 81.

Under the court's interpretation of CPLR § 302, it has been held that mere shipment of goods into the state may not be sufficient activity to support jurisdiction. Kramer v. Vogl, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966); A. Millner Co. v. Noudar, L.D.A., supra.

■ Applying the above criterion to the instant case, and even assuming the interpretation of some of the facts as contended by the appellee, we find that there is, under New York law, a serious question as to whether or not appellant Mermis had transacted any business in New York. In its pleadings, affidavit and interrogatories the appellee does nothing more than establish that the stock certificate signed in blank and placed with Mrs. Mermis' husband was in some manner sent to New York and sold. The instruments go into detail regarding the sale of the stock, and give conclusions as to how Meade & Co. acted as Mrs. Mermis' agent, and that the sale therefore was a transaction of business within the city of New York. This conclusion that there was a transaction of business in New York is persistently denied by appellant.

Most of appellee's allegations which would go to show contacts and purposeful activities in New York have been categorically denied and placed in issue by appellant. It would serve no useful purpose to set forth the various pleadings, affidavits, interrogatories and answers thereto to show issues of facts created thereby. We need only refer to the various instruments filed by appellant, particularly the answer, the answer to request for admissions and the affidavit in opposition to motion for summary judgment to find that appellant Mermis has denied the very facts which appellee has asserted to bring the "long-arm" statute into play. In these Mrs. Mermis denies that she had an account

with Meade & Co. or that she forwarded the certificate in question to them to sell for her account. As to the claim which was presented to the receiver for Meade & Co., she stated in her affidavit "that the filing of the alleged proof of claim was not made by this affiant; that she never went before a Notary Public either on the 16th day of August, 1963, or any other date and executed the alleged proof of claim".

 If the pleadings, depositions and admissions on file, together with the affidavits and exhibits which were considered by the court showed that there was a genuine issue as to any material fact involved in the issues formed by the pleadings, then the court erred in granting summary judgment. In reviewing the granting of the motion for summary judgment this Court must construe the record in the light most favorable to the party opposing the motion. See 16 A.R.S., Rules of Civil Procedure, Rule 56. For the reasons stated, we find the court erred.

Reversed and remanded.

CAMERON, C. J., and FRANK X. GORDON, Jr., Judge of Superior Court, concur.

NOTE: Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge FRANK X. GORDON, Jr. was called to sit in his stead and participate in the determination of this decision.