Simmons *v*. Motors Insurance Corp.

Jan. 21, 1952.

No. 38212 (56 So. (2d) 480)

**Henley, Jones & Woodliff,** for appellant.

**Landrum & Busby,** for appellee.

**Lee, J.**

Mrs. A. W. Simmons sued Motors Insurance Corporation to recover for damage to her automobile under an insurance contract. From an adverse judgment she appeals.

Her claim arose in this way: James R. Ulmer, of the Ulmer Buick Agency in Brookhaven, Mississippi, sold Mrs. Simmons a Buick automobile on January 22, 1948. Ulmer was also an agent of the Motors Insurance Corporation, which sells insurance on automobiles. Simultaneously with the cash purchase of the automobile, she signed an application for an insurance policy, offering to pay cash therefor. It was necessary to forward the application to the Jackson office of the appellee, where the policies are actually issued. Ulmer advised that it would not be necessary for her to pay cash at that time, as a thirty day credit would be extended. The policy was issued for one year, expiring January 22, 1949. Upon its delivery, on January 27, 1948, Mrs. Simmons gave her check in payment. At least ten days before the expiration date she received the following notice: ''Your

Automobile Physical Damage Insurance Policy 141M-1757 Expires 1-22-49. MIC Agent is Jas. R. Ulmer. The cost of renewing this policy for one year is $82.00.

Mrs. A. W. Simmons
Hazlehurst, Miss.

"Just check the method of payment which is most convenient for you and forward this notice immediately to the MIC Agent in your General Motors Dealership.
☐ Enclosed is entire premium.
☐ Enclosed is $———, balance to be paid within 30 days.

—————————————
Signature

1948-51 Buick Sedan
REMEMBER Your MIC agent has a dual interest in your satisfaction—as a car customer and as an insurance client.
Care for Your Car — Keep It Insured"

Mrs. Simmons neither signed nor returned the notice either to the Jackson office or to Ulmer. She neither communicated with them nor paid the amount or any part thereof. On February 7, 1949, after the expiration of the policy, her car was wrecked. On the next day she filled out the notice to renew, and forwarded it, together with her check for $82, to the Jackson office. Upon investigation, and, when the appellee determined that the damage was sustained after the expiration of the policy, it returned her check and declined to pay the loss.

Appellant contends, first, that it was not necessary for the renewal to be in writing. She testified that, when she made application for the insurance, Ulmer told her that she had thirty days within which to pay all premiums.

There is abundant authority to sustain the contention that the renewal need not necessarily be in

writing. Liverpool & London & Globe Co. v. Hinton, 116 Miss. 754, 77 So. 652; Appleman, Insurance Law and Practice, Sec. 7645, vol. 13, p. 409; and authorities there cited.

But appellant has evidently confused the right of renewal with the right to an extension of credit for the payment of premiums. ▆▆ She was notified ten days in advance of the expiration. She was expressly informed that her policy would expire on January 22, 1949, and that the cost of renewing would be $82. She was requested to check the method of payment, which would be most convenient to her, namely, payment of the entire premium, or "$———, balance to be paid within 30 days", and to forward the notice to the MIC Agent. She was further admonished to "Care for your car. Keep it insured." It was, therefore, necessary for her to signify her intention to renew; otherwise, there would be no occasion to extend credit. In spite of the plain terms, she did not send the $82. She did not send any money at all. Besides, she did not even return the notice. In other words, she did not comply with any of the terms. Her inaction constituted a complete failure or refusal to ask for a renewal.

Under the foregoing circumstances, if the insurance company, without more, had renewed the policy and Mrs. Simmons had thereafter suffered no damage to her automobile, what court would allow the company to recover $82 from her? She would have a complete defense to such a suit, because she did not elect to comply with any of the terms, necessary to a renewal. Because she made no effort to renew, likewise, she can not compel the insurance company to reimburse her loss.

▆▆ Appellant also contends that appellee, by its conduct, was estopped to deny the renewal. But such acts as her sending the notice, together with her check, after the accident; the assurance of Ulmer that he would do what he could for her; the sending of an investigator to the vicinity; and the expression of hope by an em-

ployee of the Jackson office that Ulmer would be permitted to do the repair work, in no way misled the appellant or resulted in any disadvantage to her. The check was not cashed. Ulmer's act was mere business diplomacy. The investigation was for the purpose of determining liability. It was necessary to repair the car, and there was no proof that Ulmer's charges were excessive.

Appellant further contends that it is the general custom, in the insurance business, to renew policies and extend credit, and that the appellee is bound by the prevailing custom. While appellee maintained that it operated its business in a manner different from insurance companies generally, the fact remains that no custom had been developed between these parties. The sale of the car and the application for the original policy were the only business transactions between them.

It follows that the trial court was correct in directing a verdict for the appellee.

Affirmed.

**McGehee, C. J.**, and **Kyle, Arrington** and **Ethridge, JJ.**, concur.