HALL, Judge.
In this suit arising out of the destruction of plaintiff’s home by fire, the issues on appeal are whether the trial court correctly (1) sustained the defendant insurance companies’ arson defense, precluding plaintiff’s recovery under the insurance policies; and (2) held that the policy of Republic Underwriters Insurance Company was in effect on the date of the loss, resulting in a proration of the loss payable to plaintiff’s mortgagee between Republic and Allstate Insurance Company. We affirm the trial court’s decision on both issues.
On January 9, 1977 the home of plaintiff, John Robert Reed, was destroyed by fire. Plaintiff filed suit to recover the loss against Allstate which had issued a homeowner’s insurance policy to him. Allstate filed exceptions of nonjoinder of indispensable and necessary parties, alleging that plaintiff’s mortgagee, Federal Land Bank Association, was an indispensable party to the litigation and that Republic, which had also issued a homeowner’s insurance policy to plaintiff, was a necessary party to the litigation. The trial court ordered that Federal Land Bank and Republic be joined as parties defendant, which they were by supplemental petition filed by the plaintiff.
The Federal Land Bank, named as loss payee in a standard mortgagee clause in both policies, intervened alleging its entitlement as mortgagee to recover under both the Allstate and Republic policies the balance due on the mortgage which was $39,-261.62, plus interest.
Allstate denied liability to the plaintiff, alleging that plaintiff intentionally set fire to his home. Alleging that it had paid the Federal Land Bank its pro rata share of the Land Bank’s claim, Allstate reconvened against plaintiff for the amount paid to the Land Bank. Answering the intervention, Allstate denied any further liability to the Land Bank. Allstate did not file a third party demand against Republic.
Republic answered denying that the policy issued by it provided coverage because *1305 the policy never was accepted by the plaintiff. Alternatively, Republic denied liability to the plaintiff because of plaintiff’s arson. Republic also reconvened against plaintiff for any amount it might be required to pay to the Land Bank.
After trial the district court, in written reasons for judgment, held the evidence clearly established plaintiff intentionally set fire to his home, precluding his recovery under the fire insurance policies. The district court further held that the Republic policy was issued with’ the consent and authority of the plaintiff in accordance with the customary practice of plaintiff and his long-time insurance agent and that the policy was in effect on the date of the loss. Accordingly, judgment was rendered (1) rejecting plaintiff’s demands against the two insurance companies; (2) rejecting interve-nor’s demands against Allstate; (3) granting judgment in favor of Allstate against plaintiff on its reconventional demand in the amount of $20,467.28; (4) granting judgment in favor of intervenor against Republic for its pro rata share of the balance of the Land Bank’s mortgage, $21,-361.39, plus interest; and (5) granting judgment to Republic on its reconventional demand against plaintiff for the amount due to the Land Bank.
Plaintiff and Republic appealed. The Federal Land Bank and Allstate did not appeal nor answer the appeal.
THE ARSON DEFENSE
Plaintiff owned his home located on an 82-acre tract of land in rural Jackson Parish. During the afternoon and evening of January 9, 1977 he was at home alone watching television. Plaintiff testified he stepped outside for about five minutes to check the weather. When he came back in the kitchen door he heard a “pop” and saw a ball of fire going throughout the house. In a matter of minutes the entire house became engulfed in flames. He ran through a hall into a bedroom and climbed out the window of the bedroom. He then went to his son’s trailer which was located nearby and called the volunteer fire department. Plaintiff conceded that if the fire was of incendiary origin he was the only one who could have started it.
The evidence establishes that the fire started at 7:00 p. m., that the fire department received a call at 7:07 p. m., and was on the scene at 7:17 p. m. When the fire department got to the scene the house was entirely engulfed in flames and was burning rapidly with intense heat. The house, valued at $33,542, was totally destroyed by ' the fire.
The defendant offered convincing and persuasive expert testimony that the fire was of incendiary origin. Grover Dunn of Dunn Laboratories in Atlanta, Georgia is a consulting engineer with many years experience in arson investigations, having investigated over 1,000 fires. Dunn made two inspections of the house on January 14,1977 and May 5, 1977, the first being about five days after the fire. He took samples from four places on the floor of the house which appeared to be points of origin. These samples were later analyzed at his laboratory and revealed the presence of accelerants such as gasoline or kerosene. Dunn testified that his inspection revealed numerous points of origin of the fire throughout the house. There were various areas where holes were burned completely through carpet padding and the tile on which it lay. There was spalling of concrete and irregular patterns or “splash patterns” in several places on the concrete slab which indicated an accelerant had been poured on the flooring. Based on melting of copper wire and other factors, Dunn determined that the fire burned with much greater heat than the ordinary house fire further indicating the presence of accelerants. The expert witness was of the opinion the fire was of incendiary origin. His testimony was strongly supported by that of Sidney Taylor, an experienced arson investigator with the state fire marshal’s office. Other expert witnesses negated the possibility that the fire could have been caused by the television set exploding or by a floor cleaning liquid that had been used on the carpet in the house a few days prior to the fire, possibilities suggested by the plaintiff but *1306 not supported by evidence in the record. Plaintiff’s suggestion that several kerosene lamps in the house could have accounted for the presence of accelerants on the floor was negated by evidence as to the location of the lamps compared to the location of the points of origin where the accelerants were present. The expert testimony also demonstrates that plaintiff’s testimony as to what he observed when he walked in through the kitchen door was implausible and incredible. The house was all-electric, negating the possibility of a natural gas explosion.
The only expert testimony offered by plaintiff was that of Dr. Hans R. Fuehrer, a consulting engineer whose primary work is in accident reconstruction and who in his entire career has investigated only between 10 and 20 dwelling fires. Dr. Fuehrer made no investigation of the premises but only read the deposition of Dunn and then made some attempt to attack some of Dunn’s conclusions. The testimony of this expert was unpersuasive, being based on minimum familiarity with the facts of the case.
In brief plaintiff’s counsel vigorously attacks the testimony of defendant’s experts and the factual findings of the trial court. However, after careful review of the record it is this court’s conclusion that the findings of the trial court are fully supported by the evidence. The evidence that the fire was of incendiary origin and that plaintiff started the fire is overwhelming and excludes every other reasonable hypothesis as to the origin of the fire. The arson defense was established under the standards of proof enunciated in Rist v. Commercial Union Insurance Co., 367 So.2d 427 (La.App. 2d Cir. 1979), writs granted 370 So.2d 574 (1979); Mansfield Bank and Trust Co. v. Brown, 353 So.2d 1056 (La.App. 2d Cir. 1977); Wallace v. State Farm Fire & Cas. Ins. Co., 345 So.2d 1004 (La.App. 2d Cir. 1977), writ refused 349 So.2d 334 (La. 1977).
THE COVERAGE ISSUE
For approximately 13 years prior to 1976 plaintiff’s insurance, homeowners and automobile, was handled by Jack Shows, owner of the Protective Insurance Agency, Inc. in Jonesboro. For several years Shows had procured for Reed homeowners and automobile insurance policies with Aetna Life & Casualty Company. It was a standing procedure for Shows to pay the premiums on the policies and to bill Reed for the premiums on open account. Reed would then pay Shows at his convenience.
On November 7, 1975 Reed made a claim under his Aetna automobile insurance policy and was told by Shows he had no insurance since it had been canceled on June 23 of that year. Reed testified that because Shows had allowed the automobile policy to be canceled without notice to him, he told Shows he did not want him writing any more insurance for him. Shows testified that his understanding was that Reed did not want him to write any more automobile insurance. The trial court correctly discounted Reed’s testimony as to what was said at this meeting because of Reed’s lack of credibility in so many respects. After this meeting Reed obtained an automobile policy from Allstate Insurance Company.
On November 8, 1975, a renewal homeowner’s policy issued by Aetna went into effect covering Reed’s home. This policy had been delivered and paid for at the time of the dispute concerning the automobile policy.
In August 1976 Republic began to place homeowners coverage through the Shows agency. Also, Aetna began a policy of billing the policyholders direct, which was not in accordance with the procedure desired and previously followed by Shows and Reed. For this reason, Shows decided to place Reed’s homeowners coverage with Republic upon expiration of the Aetna policy in November 1976. In September 1976 Shows prepared an application for Reed for a homeowners policy with Republic and issued a Republic policy, effective November 8, 1976, providing the same coverage as previously provided by the Aetna policy. On October 1, 1976 Shows mailed a memorandum of the Republic policy to Reed with an invoice for the premium. At the same time he mailed the original policy, naming *1307 the Federal Land Bank as mortgagee, to the Land Bank. The Land Bank received the policy on October 4 and, in turn, in accordance with its usual policy, mailed the policy on to Reed with a cover letter.
On October 9, 1976 Reed went to the office of Jerry D. Shankles, the Allstate agent, and completed an application for homeowners coverage with Allstate, to be effective November 8. The Allstate application shows the Republic policy number and the Aetna policy expiration date. Shankles mailed the original Allstate policy to the Federal Land Bank which received it on October 25, 1976 and, in accordance with its usual practice, mailed the policy to Reed.
There was no further contact between Shows and Reed until after the date of the fire. Reed never paid Shows’ invoice for the premium but Shows was obligated to Republic for payment of the premium and would have paid it in due course except for the fact that a Republic representative advised him not to pay the premium after the fire took place. The policy was carried on Republic’s books and Shows’ books as being in full force and effect at the time of the fire.
Reed testified that he knew nothing at all about the Republic policy and never received it. As found by the trial court, this testimony is unbelievable in view of the fact that Shows mailed Reed a memorandum of the insurance, the Land Bank mailed the original policy to Reed, and the Republic policy number was given by Reed to the Allstate agent.
Republic’s position is that the issuance of the policy, in the nature of a renewal, by Republic amounted to an offer to insure and that the offer was never accepted by Reed through the payment of premium or otherwise. Cited as authority for this position is Rigdon v. Marquette Casualty Company, 163 So.2d 442 (La.App. 2d Cir. 1964), writ refused 246 La. 578, 165 So.2d 480 (1964); Simmons v. Motors Ins. Corp., 213 Miss. 165, 56 So.2d 480 (Miss.1952). Republic relies on the fact that Reed obtained a policy from Allstate and the nonpayment of premium as evidencing Reed’s intent not to accept Republic’s offer to insure. Republic also relies on Reed’s testimony that he instructed Shows not to procure any more insurance for him. As indicated above, Reed’s testimony that he so instructed Shows was not accepted by the trial court and is not accepted by this court as true.
The intervenor, Federal Land Bank, has not filed a brief in this court but its position is championed in this court by Allstate which briefed the coverage issue. Allstate takes the position that Reed’s inaction and failure to reject the Republic policy amounted to an acceptance of the policy because of the customary and usual business practice existing between Shows and Reed whereby Shows was authorized to procure insurance and place it in effect without further action on the part of Reed. Allstate cites 43 Am.Jur.2d § 380, “Insurance” at page 428; 44 C.J.S. Insurance § 283 c; 13 Appleman, “Insurance Law and Practice” § 7646; Couch on Insurance, 2d § 68:32; Small Agency, Inc. v. Dugay, 4 Conn.Cir. 710, 239 A.2d 553 (Conn.App. 8th Cir. 1967); Eicks v. Fidelity and Casualty Company, 300 Mo. 279, 253 S.W. 1029 (1923).
Although no express authority was given by Reed to Shows to procure the specific Republic policy issued in this case, there existed implied, which is actual, authority for Shows to procure the insurance on Reed’s behalf, based on the insurance procurement relationship which had existed between Shows and Reed over a period of many years. The application submitted to Republic by Shows on behalf of Reed amounted to an offer to obtain insurance which was accepted by Republic when it issued and delivered its policy. The insurance contract was complete at this point, particularly as to the Federal Land Bank which was named as mortgagee and loss payee under a standard mortgagee clause and to whom the original policy was delivered by Republic. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973); Cason v. Cecil, 194 La. 41, 193 So. 362 (1939); Craft v. Trahan, 351 So.2d 277 (La.App. 3d Cir. 1977), writ refused 353 *1308 So.2d 1336 (1978); Pallet v. Guillory, 316 So.2d 893 (La.App. 3d Cir. 1975); Busby v. Walker, 84 So.2d 304 (La.App. 2d Cir. 1955), writ denied; 44 C.J.S. Insurance § 266 at page 1069; Couch on Insurance 2d, Vol. 1, § 7:11 at page 319. See Carey v. Guaranty Income Life Insurance Company, 292 So.2d 337 (La.App. 2d Cir. 1974).
The policy was never canceled by Republic for nonpayment of premium or otherwise and it is not contended that the Land Bank, which is the party asserting a claim under the policy, was ever notified of cancellation or any other question as to the existence and effect of the policy. As to the Federal Land Bank the policy was in full force and effect and provided coverage to the Land Bank as mortgagee. The Land Bank is entitled to recover Republic’s pro rata share of the balance due on the mortgage and the judgment to that effect is correct.
DECREE
The judgment of the district court is affirmed. The costs of appeal are assessed one-half to the plaintiff-appellant, Reed, and one-half to the defendant-appellant, Republic Underwriters Insurance Company.
Affirmed.