481 So.2d 256 (1985)
Robert L. WILLIS, Jr.
v.
MISSISSIPPI FARM BUREAU MUTUAL INS. CO.
No. 55832.
Supreme Court of Mississippi.
November 27, 1985.
John W. Christopher, Christopher & Stater, Canton, for appellant.
John B. MacNeill, Heidelberg, Woodliff & Franks, Jackson, for appellee.
Before PATTERSON, C.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal presents the question whether automobile insurance coverage remained in effect three weeks after expiration of the policy and where the insured has failed to pay timely the renewal premium. The trial judge held that the coverage had lapsed, notwithstanding the insured's tender of the renewal premium following an automobile accident (occurring three weeks after expiration of the original policy) and granted summary judgment for the insurer. We regard that the trial judge has correctly construed the applicable statutes, the provisions of the insurance policy and the renewal and premium due notices sent the insured. We also find that the trial judge has correctly applied to the facts of this case the standards in our law concerning when summary judgment may be granted. We affirm.

II.

A.
Robert L. Willis, Jr. ("Willis"), an adult resident citizen of Madison County, Mississippi, *257 was the Plaintiff below and is the Appellant here. Mississippi Farm Bureau Mutual Insurance Company ("Farm Bureau") is an insurance company licensed to do and doing business in the State of Mississippi. Farm Bureau was the Defendant below and is the Appellee here.
For almost 30 years Sara Willis, Robert L. Willis' mother, had insurance of various kinds with Farm Bureau. At one time Willis was covered on the same automobile insurance policy as his mother. On all of these policies apparently premiums were payable annually.
Willis began picking up speeding tickets as a result of which Farm Bureau insisted that his coverage be rated and written separately. On April 15, 1982, Farm Bureau issued its first policy of automobile insurance directly to Willis with him being the sole insured. This was Policy No. A146658, the effective dates of which were from April 15, 1982 to October 15, 1982.
The declarations page for the policy provided as follows:
1. POLICY PERIOD: The term of the policy shall be from the effective date of 4/15/82 to 10/15/82 12:01 a.m., standard time at the address shown below, and for such succeeding terms of six calendar months hereafter as the required renewal premium is paid by the insured on or before the expiration of the current term and accepted by the company.
The premium for this initial policy period was paid by Willis' mother.
On or about September 30, 1982, just over two weeks prior to the expiration date of the initial six month period, Farm Bureau mailed to Willis' permanent mailing address another declarations page indicating some minor changes in coverage, all in contemplation of Willis renewing his insurance. Language identical to that quoted above was stated in declaration no. 2, except that the effective dates of the policy were shown to be from October 15, 1982 to April 15, 1983. Additionally, on the lower right-hand part of declaration no. 2, there was shown to be an amount due of Two Hundred and Sixty-Eight Dollars ($268.00) on the policy, and a due date of October 15, 1982. The notation under the boxes where the amount due and the due date were indicated provided as follows: "Please pay amount due on or before due date".
With declaration no. 2, Farm Bureau also mailed to Willis a premium due notice which indicated that the amount of Two Hundred and Sixty-Eight Dollars ($268.00), the premium for the additional policy period, was due on October 15, 1982. Contained on the premium notice was the following language: "For continuous protection, please mail your payment prior to the date due". There was further language on the premium due notice which indicated that the proposed new policy would expire six months from the date due "if premium is paid".
There is no dispute that, from the time of receiving the premium due notice, together with declaration no. 2, in early October 1982, until the time of the accident on November 5, 1982, neither Willis, nor his mother, nor anyone acting on his behalf, paid Farm Bureau the Two Hundred and Sixty-Eight Dollar ($268.00) premium which was admittedly due.
On November 5, 1982, Willis was involved in an automobile accident wherein his vehicle sustained property damages allegedly in the amount of somewhat more than Three Thousand Dollars ($3,000.00). After the accident, on or about November 9, 1982, the premium for automobile coverage for Willis' vehicle was paid, and the policy was reinstated as of that time. Farm Bureau steadfastly maintains that Willis had no coverage in effect between October 15 and November 9, 1982, and accordingly has declined to pay Willis' claim arising out of the November 5 accident.

B.
Robert L. Willis, Jr. commenced this civil action on June 27, 1983, by the filing of his complaint in the Circuit Court of Madison County, Mississippi. Mississippi Farm Bureau Mutual Insurance Company was *258 named as the sole defendant. In his complaint, Willis sought recovery of $3,405.27 for damages to his automobile, $50,000.00 for mental and emotional distress and other incidental damages, and $1,000,000.00 in punitive and exemplary damages. Farm Bureau answered and denied the essential allegations of the complaint.
In due course the parties engaged in not inconsiderable discovery. On May 21, 1984, Farm Bureau invoked the provisions of Rule 56, Miss.R.Civ.P., and moved for summary judgment. Following oral argument of counsel, the Circuit Court on June 11, 1984, announced that the motion would be granted. Thereafter on July 6, 1984, judgment was entered summarily in favor of Farm Bureau and against Willis dismissing the complaint with prejudice. This appeal has followed.

III.
The procedural questions presented via a summary judgment motion are whether there are genuine issues of material fact, and, if not, whether on the uncontroverted facts the moving party is entitled to judgment as a matter of law. In Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983), reiterating the comments by the Advisory Committee, we admonished ourselves that
A motion for summary judgment lies only where there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried.
444 So.2d at 362.
The argument that there exists no genuine triable issue of material fact is functionally comparable to a motion for a directed verdict or a request for a peremptory instruction. It merely occurs at an earlier stage in the life of a civil action. The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to a judgment as a matter of law, summary judgment should forthwith be entered in his favor. See Brown v. Credit Center, Inc., 444 So.2d at 362.
We have on four occasions applied our Rule 56 in the context of a trial judge's entry of summary judgment in a case which turned on the construction of a contract. Generally speaking, we take a dim view of the practice of resolving contract ambiguities via summary judgment. Dennis v. Searle, 457 So.2d 941, 947 (Miss. 1984); Biggers v. Fox, 456 So.2d 761, 763 (Miss. 1984). On the other hand, where the contract is without material ambiguity, the matter if often appropriate for summary disposition. This is so where the provisions of the contract are clear, even though not perfectly clear. Shaw v. Burchfield, 481 So.2d 247, 252 (Miss. 1985); Smith v. First Federal Savings & Loan Association, 460 So.2d 786, 790 (Miss. 1984).
The parties present no dispute regarding the material facts. The only questions presented concern the proper reading of statutes, the placement of proper meanings upon terms of an insurance contract, and giving correct legal effect to notices (and the lack thereof) from Farm Bureau to its insured. Because we find no substantial ambiguities regarding any of these matters, this is a proper case for summary disposition.

IV.
Willis' claim is that Farm Bureau was required to send him an express notice of cancellation before his coverage could be terminated. Whether this is so is largely a function of the insurance code of this state wherein a distinction is drawn between the obligations imposed upon an insurance company where it is cancelling a policy, on the one hand, and where it is merely declining to renew a policy, on the other.
Miss. Code Ann. § 83-11-7 (1972) reads as follows:
Nonrenewal.

*259 No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least thirty (30) days advance notice of its intention not to renew. This section shall not apply:

(a) if the insurer has manifested its willingness to renew, subject to certain specified conditions which are not met by the insured; nor
* * * * * *
(c) in case of nonpayment of premium;
A reading of the premium notice and declaration no. 2 mailed to Willis on September 30, 1982, manifests Farm Bureau's willingness to renew, subject to the payment of premium owed. Thus Willis did not meet the specified condition contemplated by subsection (a). Subsection (c) explicitly declares that the thirty (30) day advance notice requirement has no application in cases of nonpayment of premium. Sensibly construed, Section 83-11-7 fails to impose upon Farm Bureau any notice of nonrenewal obligation beyond the notice in fact given Willis.
Willis argues that Section 83-11-7 is not controlling here as Farm Bureau renewed the insurance policy when it issued and delivered declaration no. 2. If this be so, Willis argues that only 10 days notice of cancellation under Section 83-11-5[1] could have effectively terminated coverage. Declaration no. 2 states at the top that:
The declarations of the policy indicated hereon are subject to all other terms and conditions of the policy and replace all previously issued declarations and should be attached to and become a permanent part of your policy.
The declaration further reads:
Policy Period: The term of the policy shall be from the effective date of 10-15-82 to 04-15-83 12:01 a.m. standard time at the address shown below, and for such succeeding terms of six calendar months hereafter as the required renewal premium is paid by the insured on or before the expiration of the current term and accepted by the company.
By this phraseology it appears that payment of the premium is a condition precedent to renewal of the policy. The Premium Notice carries the following statement at the top of the page, "For continuous protection please mail your payment prior to the date due ..." This language is sufficient to meet the requirements of Miss. Code Ann. § 83-11-9 (1972) proof of notice requirement:
Proof of Notice.
Proof of mailing of notice of cancellation, or of intention not to renew, or of reasons for cancellation to the named insured by a certificate of mailing, at the address shown in the policy, shall be sufficient proof of notice.
Farm Bureau mailed declaration no. 2 on September 29, 1982, 16 days before the policy expired. Thus, even if Section 83-11-5 is deemed to be the applicable statute, sufficient notice is present.
An almost identical situation was considered by this Court 33 years ago in the case of Simmons v. Motors Ins. Corp., 213 Miss. 165, 56 So.2d 480 (1952). The insured in Simmons ignored a renewal notice which contained basically the same information as the renewal notice sent to Willis. Shortly thereafter she wrecked her car, filled out the notice to renew and forwarded it, together with her check for the premium, to her insurance agent. The insurer, *260 as did Farm Bureau here, declined payment explaining that the policy had expired. Simmons raised the same estoppel argument as Willis has raised. She claimed that by sending her notice the company had renewed the policy and extended credit and that such was the custom in the insurance business. The court took no truck with that argument and explained that customs of insurance companies in general had no effect on the contract between these parties in particular. The custom between the insured and the insurer was all that would be binding and as the original policy was the only business transaction between them, no such custom could be claimed. 56 So.2d at 482.
The Simmons Court held that, as she had failed to send the insurer the amount stated as the premium payable upon renewing the insurance policy and had received the expiration notice more than ten (10) days from the expiration date and had failed to comply with any terms of that notice, the putative insured was precluded from recovering on the policy for damage to her automobile.
We have not overlooked the custom existing between Willis' mother and the insurance company. The law on this point is well put in several Alabama cases:
We have held that if an insurance company, by its habits of business, creates in the mind of a policyholder the belief that payment may be delayed until demanded, or otherwise waives the right to demand a forfeiture, this is binding on the company notwithstanding there may not have been a compliance with the express letter of the policy. Home Protection of North Alabama v. Avery, 85 Ala. 348, 5 So. 143. Such is the general rule. 45 C.J.S. Insurance § 712; 29 Am.Jur., Insurance, § 860; 3 Couch On Insurance, § 681. But that principle has no application unless the custom or usage was one of which the insured had knowledge and upon which he relied. Bosworth v. Western Mut. Aid Soc., 75 Iowa 582, 39 N.W. 903; 3 Couch On Insurance, § 681a.
Childress v. Foremost Ins. Co., Inc., 411 So.2d 124, 126 (Ala. 1982); Inter-Ocean Insurance Company v. Banks, 268 Ala. 25, 28, 104 So.2d 836 (1958). In Childress the court held, that if the custom was with regard to this plaintiff or if the plaintiff had knowledge of and relied upon it, a directed verdict would not lie. 411 So.2d at 126.
The facts of the case at bar do not fit this exception. In spite of Farm Bureau's long course of dealings with Mrs. Willis, there is no showing of any course of conduct toward her or her son, Robert L. Willis, Jr., which would have lulled him into a false sense of security. The contrary seems to be the case. Farm Bureau insisted that Willis be taken off his mother's policy and that his automobile insurance be written as a separate risk. The policy term was reduced from one year to six months. There is no suggestion in the record of any custom or practice on the part of Farm Bureau toward Willis or his mother that would have led him to believe that the company would renew the coverage notwithstanding the October 15, 1982, termination date on the original policy, even though Willis failed to pay timely the renewal premium. There is also nothing in the evidence that would establish credibly that Robert Willis relied on any custom or practice of Farm Bureau in this regard. Summary judgment in favor of Farm Bureau was correctly entered.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Miss.Code.Ann. § 83-11-5 (1972):

Notice of Cancellation.
No notice of cancellation of a policy to which Section 83-11-3 applies shall be effective unless mailed or delivered by the insurer to the named insured at least twenty (20) days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten (10) days notice of cancellation accompanied by the reason therefor shall be given. Unless the reason accompanies or is included in the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer not less than fifteen (15) days prior to the effective date of cancellation, the insurer will specify the reason for such cancellation.
This section shall not apply to non renewal.