## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1998-CA-01248-SCT

*BOBBY BROWN AND LINDA BROWN*

*v.*

*PROGRESSIVE GULF INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/28/1998 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | LAWRENCE J. HAKIM |
| ATTORNEY FOR APPELLEE: | H. RICHMOND CULP, III |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 02/24/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/16/2000 |

## EN BANC.

## PRATHER, CHIEF JUSTICE, FOR THE COURT:

### STATEMENT OF THE FACTS AND CASE

¶1. In March, 1996, Bobby and Linda Brown purchased a personal auto policy from Progressive Gulf Insurance Company ("Progressive"). The Browns were routinely late in mailing their premium payments; the record reveals that the couple was charged a late payment fee on six occasions and that four cancellation notices were sent to them during the course of the policy.

¶2. On October 2, 1996, Progressive mailed the Browns a Notice of Payment Due, notifying the couple of an unpaid balance of almost five hundred dollars. On October 7, 1996, Progressive mailed the Browns a Notice of Cancellation which informed the couple that their policy would be canceled on October 19, 1996, at 11:59 p.m. if the premium due were not mailed by that time. It was not until October 23, 1996, however, that the Browns mailed the payment to Progressive. Progressive processed this payment, issued a refund payment to the Browns, and sent this payment along with a financial report dated October 28, 1996. This financial report clearly indicated that the Browns' policy had been canceled.

¶3. On October 30, 1996, Bobby Brown was involved in a single vehicle accident while operating a truck which had been covered by the Progressive policy. The Browns sought to recover under the Progressive policy, but Progressive denied the claim on grounds that the policy had been canceled due to the non-payment of premiums. On February 3, 1997, the Browns filed a complaint in the Circuit Court of Lafayette County, alleging bad faith on the part of Progressive in refusing to pay their claim. The Circuit Judge granted summary judgment in favor of Progressive, and the Browns timely appealed to this Court.

## ISSUES

**I. Whether the trial court erred as a matter of law in granting summary judgment to appellee in this matter; Whether genuine issues of material fact exist so as to preclude the granting of summary judgment in this matter; Whether the trial court abused its discretion in granting summary judgment where appellee was not entitled to summary judgment as a matter of a law and genuine issues of material fact exist.**

**II. Whether appellee's acceptance, negotiation, renegotiation and deposit of appellants' last premium prevent appellees canceling the subject policy and denying appellants' claim.**

**III. Whether the appellee's commission and omission of acts constitute the tort of bad faith so as to allow appellants' recovery of their damages.**

**IV. Whether appellee's commission and omission of acts constitute a waiver or estoppel so as to preclude a defense based on an [alleged] arguable basis to deny appellants' claim.**

¶4. Although a variety of issues are presented in the present appeal, these issues all center around the issue of whether Progressive properly denied coverage under the automobile policy in the present case due the prior cancellation of this policy for non-payment of premiums.

¶5. Miss. Code Ann. §  83-11-5 (1999) sets forth the procedures by which an insurer may cancel a policy for non-payment of premiums:

> No notice of cancellation of a policy to which section 83-11-3 applies shall be effective unless mailed or delivered by the insurer to the named insured at least thirty (30) days prior to the effective date of cancellation; provided, however that where cancellation is for nonpayment of premium at least ten (10) days notice of cancellation accompanied by the reason therefore shall be given. Unless the reason accompanies or is included in the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer not less than fifteen (15) days prior to the effective date of cancellation, the insurer will specify the reason for such cancellation.

In order to cancel an insurance policy based upon nonpayment of premiums, an insurer must thus give at least ten (10) days notice of cancellation, and the notice of cancellation must either provide the reason for the cancellation or inform the insured that he has fifteen (15) days prior to cancellation to request the reason for the cancellation.

¶6. The record indicates that, on October 7, 1996, Progressive mailed Brown a notice stating that:

> The insurance policy listed below is cancelled at the hour and date shown because your premium payment has not been received. .... October 19, 1996 at 11:59 pm. ...You can avoid this cancellation by properly mailing ... the premium due Progressive on or before the cancellation date shown above.

The notice of cancellation provided by Progressive thus provided more than ten days' notice of the cancellation and further informed the Browns that the cancellation was based on nonpayment of premiums, as required by section 83-11-5. Linda Brown testified that she received the notice and read it, although she was unable to recall the date of receipt. Linda Brown did send a $ 129.05 premium check to Progressive,

but the check was dated October 21, 1996, and Progressive's records indicate that the premium check was postmarked October 23, 1996. Linda Brown conceded in her testimony that she had no information that would indicate that she mailed the check before 11:59 p.m. on October 19, 1996.

¶7. Faced with what would otherwise constitute a statutorily valid cancellation, the Browns argue that Progressive should be equitably estopped from denying coverage due to the fact that Progressive negotiated the premium check which the Browns belatedly sent, prior to sending the couple a refund. The doctrine of equitable estoppel is based upon fundamental notions of justice and fair dealing. *O'Neill v. O'Neill*, 551 So.2d 228, 232 (Miss.1989). This Court has identified two elements that must be satisfied in order for the doctrine to be applicable: "(1) that he [a party] has changed his position in reliance upon the conduct of another; and (2) that he has suffered detriment caused by his change of position in reliance upon such conduct." *Id.* at 232 (citing *PMZ Oil Co. v. Lucroy*, 449 So.2d 201, 206 (Miss.1984)).

¶8. Progressive does not deny that it negotiated the check, but it characterizes this negotiation as an administrative "processing" of the check which, the record indicates, was immediately followed by the sending of a refund. Neither party cites Mississippi cases dealing with this precise issue, although the Browns cite 46 C.J.S. *Insurance*, at 145 (1993) § 832(a) in support of their assertion that "a forfeiture of an insurance policy for non-payment of a premium when due is waived by an unconditional acceptance of the payment of the premium after default." It is far from clear, however, that this legal treatise supports the Browns' position in the present case. The same treatise notes, for example, that the "[m]ere computer posting and subsequent negotiation of a money order representing the amount of a delinquent premium payment, without more, does not give rise to an estoppel when the sum is refunded within a reasonable time."*Id.* (footnote omitted). In the present case, Progressive immediately sent a refund of unpaid premiums to the Browns along with a financial statement dated October 28, 1996, which clearly indicated that the policy had been canceled. It is thus apparent that the Browns' position is not supported by the very authority which they cite in the present case.

¶9. Progressive cites 16C John A. Appleman and Jean Appleman, Insurance Law & Practice § 9299, at 491 (1981), in support of its assertion that "(i)t is a firmly established principle of insurance law that cashing and processing an insured's tardy premium check and thereafter returning unearned premiums to an insured does not show an abandonment of the insurer's intention to cancel." A review of applicable case law indicates that Progressive's position in the present case is supported by well-reasoned authority.

¶10. In *Troutman v. Nationwide Mut. Ins. Co.*, 400 S.W.2d 215 (Ky. 1966), the plaintiff, as in the case at bar, argued that the insurer's negotiation of a premium check sent following the cancellation of a policy should estop the insurer from asserting a lack of coverage. The Kentucky court rejected this argument, holding that:

> The one immutable fact in this case is that the policy by its express terms expired on December 21, 1962. To give it new life so as to be effective on January 11, 1963, would require a finding either that there was in actuality a contractual renewal or that the company is estopped to deny that there was a renewal. No one contends that there was an express agreement of renewal, which leaves for consideration only the question of estoppel.
>
> . . . The company did nothing before the accident to lead Mrs. Findley to believe that the policy would continue in force beyond December 21. The mailing of the premium by Mrs. Findley on January 15 was not prompted by anything done by the company to indicate that such late payment might be

effective; on the contrary it was done in the face of a statement by the agent that the policy was dead. The cashing of a check by the company and its delay in notifying Mrs. Findley of the termination of the policy and in refunding the amount of the check did not cause Mrs. Findley to change her position to her detriment or in any way create any equities in her favor. We find none of the elements of an estoppel in the facts of this case.

*Id.* at 216-17. *See also **DeTemple v. Southern Ins. Co.***, 79, 740 P.2d 500, 503 (Ariz. Ct. App.1987) (insurer's actions in cashing a check sent following the lapse of a policy did not give rise to a finding of waiver or estoppel.).

¶11. This Court concludes that a similar result should be reached in the present case. The doctrine of equitable estoppel requires a showing that a party detrimentally relied on the actions of another party. *O'Neill*, 551 So.2d at 232. In the present case, Progressive clearly informed the Browns, in writing, that their policy would be canceled as of 11:59 p.m. on October 19, 1996, if they did not mail their premium payment by that time. The Browns' failure to comply with this requirement is their responsibility alone, and the mere negotiation of the refund check by Progressive could not have given rise to a reasonable belief on the part of the Browns that their policy was still in effect, even assuming, purely *arguendo,* that the Browns were even aware of this negotiation at the time of the accident[1]. In ***Unruh v. Prudential Property & Cas. Ins. Co.***, 43 F.Supp.2d 1237 (D.Kan.1999), a Kansas federal district court recently held equitable estoppel to be inapplicable in a factual situation similar to the present one, where the plaintiff failed to show that he had relied on the insurer's negotiation of a check.

¶12. The present appeal presents a particularly poor case for a finding of equitable estoppel, given that the record indicates that Progressive prepared the financial statement confirming that the policy had been canceled two days *prior* to the October 30, 1996 accident. The record further reveals that Progressive drafted the refund check on October 29, 1996. Progressive's equitable standing in the present case might be somewhat lower if the record supported a finding that it only elected to refund the Browns' premium and confirm the cancellation of the policy *after* learning of the accident, and that it otherwise would have allowed the policy to be revived. Such is clearly not the case, however.[2]

¶13. The fact that Progressive immediately sent the Browns a refund check clearly supports a finding that the initial negotiation was, as it asserts, a mere administrative processing of the check rather than a formal election to revive the canceled policy. This Court concludes that Progressive should not be estopped from asserting a lack of coverage in the present case based upon the negotiation of the check in question, and this point of error is without merit.

### V. Whether a course of dealing existed between the parties whereby appellants mailed and appellee accepted late premium so as to operate as an estoppel or waiver preventing appellee's attempted cancellation of the subject policy and denial of appellants' claim.

¶14. The Browns next argue that a course of dealing existed between Progressive and themselves, by which Progressive would accept late payments. The Browns argue that:

Finally, and most importantly, it is also Hornbook Law that an insurance company cannot insist on a forfeiture for failure to pay premiums in accordance with the terms of the policy when its course of dealing has been such as to induce the belief in the insured that strict compliance with such provisions will not be insisted on, as where it has been its custom to receive premiums after they are due. 46

C.J.S. *Insurance* § 833(a).

The Browns cite ***Willis v. Mississippi Farm Bureau Mut. Ins. Co.***, 481 So.2d 256, 260 (Miss. 1985), wherein this Court noted that:

[I]f an insurance company, by its habits of business, creates in the mind of a policyholder the belief that payment may be delayed until demanded, or otherwise waives the right to demand a forfeiture, this is binding on the company notwithstanding there may not have been a compliance with the express letter of the policy. ***Home Protection of North Alabama v. Avery***, 85 Ala. 348, 5 So. 143. Such is the general rule. 45 *C.J.S. Insurance* § 712; 29 Am.Jur., Insurance, § 860; *3 Couch On Insurance*, § 681 . . .

*Willis*, 481 So.2d at 260 (quoting ***Childress v. Foremost Ins. Co.,*** 411 So. 2d 124, 126 (Ala. 1982)).

¶15. While the Browns note (and Progressive acknowledges) that Progressive had accepted late premiums in the past, there is no indication in the record that Progressive had ever accepted late premiums following the sending of a cancellation notice and the expiration of a deadline set forth therein. As such, there is no evidence of a course of dealing which would lead the Browns to reasonably conclude that their coverage would continue past 11:59 p.m. on October 19, 1996. The acceptance of late premiums pursuant to the terms of a policy is an entirely different matter than reviving a policy of insurance once the policy has already been canceled for non-payment of premiums. The Browns' arguments are without merit, and the judgment of the Lafayette County Circuit Court is affirmed.

¶16. **AFFIRMED.**

> **PITTMAN, P.J., BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**
>
> **McRAE, JUSTICE, DISSENTING:**

¶17. In affirming the trial court's award of summary judgment, the majority has once again stripped a jury of its role in deciding issues of fact. The Browns possessed a personal automobile insurance policy from Progressive Gulf Insurance Company ("Progressive") which provided coverage on two automobiles up to March 21, 1997. An accident occurred involving one of those automobiles some nine days after the Browns mailed a premium payment of $129.05 which was accepted, negotiated and deposited by Progressive. It was not until nearly two months later that the claim was denied in writing. By denying that they received the financial report of the canceled policy prior to October 21, 1996, the Browns, at the very least, created a disputed issue of material fact as to whether coverage was accepted. Progressive later learned that an accident had occurred, upon which time it chose to undertake post-claim underwriting. This case present issues which could only be resolved by a jury presented with all available evidence bearing on the subject. Accordingly, I dissent.

¶18. An insurance company must not be allowed to insist on a cancellation for failure to pay premiums when its course of dealing has caused the insured to believe that strict compliance is not required, as where the insurer has customarily accepted premium payments after their due date. 46 C.J.S. *Insurance* § 833(a). Additionally, whether an insurance company's conduct or custom with regard to accepting premiums gives rise to estoppel is a jury question. *Id*.

¶19. This general rule has been accepted in Mississippi as well. In *Willis v. Mississippi Farm Bureau Mut. Ins. Co.*, 481 So.2d 256 (Miss. 1985) this Court noted:

> if an insurance company, by its habits of business, creates in the mind of a policyholder the belief that payment may be delayed until demanded, or otherwise waives the right to demand a forfeiture, this is binding on the company notwithstanding there may not have been a compliance with the express letter of the policy. . . .But that principle has no application unless the custom or usage was one of which the insured had knowledge, and upon which she relied.

481 So.2d at 260 (quoting *Childress v. Foremost Ins. Co.*, 411 So.2d 124, 126 (Ala. 1982)).

¶20. In *Willis* this Court ruled on whether an insurer was required to send a notice of non-renewal before the policy could be terminated. *Willis*, 481 So.2d at 257. However, this Court held that although the insured argued it had relied on a custom of acceptance of late payments by the insurer, "there was no suggestion in the record" of any custom or practice. The facts of the case sub judice are completely distinguishable from those in *Willis* in that Progressive conceded a custom and/or course of conduct in accepting late payments.

¶21. In looking at the conduct of both parties, an obvious course of dealing was established which could estop Progressive from canceling the insurance policy and denying the Browns' claim, but only a jury can make this determination. The course of dealing or custom developed was in the Browns' mailing and Progressive's accepting late premium payments. As Progressive admitted in their brief, the Browns were often charged a late payment fee (six times) and had previously been sent cancellation notices (four times). In spite of late payments the Browns' policy was never actually canceled until the claim at issue was made. The majority acknowledges that Progressive had accepted late payments in the past but claims that there is "no indication in the record that Progressive had ever accepted late premiums following the sending of a cancellation notice and the expiration of a deadline set forth therein." That is a decision for a jury to make, not this Court.

¶22. Accordingly, I dissent.

## SULLIVAN, P. J., JOINS THIS OPINION.

1. Linda Brown testified that she believed that her premium check was negotiated on October 23, 1996, because "it seems to be the first date stamped on the check after the insurance company received it." Linda Brown thus learned of the date of negotiation from reading the back of the canceled check, and, it appears impossible that she would have seen this canceled check prior to the October 30 accident. The back of the check is stamped with a number of dates, including the date November 4, 1996, seemingly indicating that the check remained within the banking system as late as that date.

If the Browns were unaware of the negotiation at the time of the accident, then there is clearly no basis under which estoppel would even arguably be applicable. Nevertheless, given that there is at least arguably a fact issue as to when the Browns learned of the negotiation, this Court will assume for the purposes of this appeal that the Browns were in fact aware of the negotiation at the time of the accident, even though such appears highly unlikely. It appears more likely that the Browns would have first learned of the negotiation when they received the refund check sent by Progressive, but the sending of the refund check would obviously confirm that the policy was in fact canceled.

2. It should also be noted that the Browns cashed the refund check sent by Progressive, further weakening their argument that the negotiation of the check by Progressive should estop Progressive from denying coverage based on the same action in negotiating a check.