McMILLIN, C.J.,
dissenting:
¶ 10. I respectfully dissent. The sole issue left alive in this proceeding is the bad faith claim asserted by the Traylors against Colonial. At some previous point in this dispute, there may have been a legitimate justiciable issue as to whether the Traylors’ accident was covered by either one of two Colonial policies issued to the Traylors. Even so, however, there is no arguable basis to conclude that the issue of coverage under either policy was so clearly in the Traylor’s favor that Colonial’s persistence in denying coverage was an act of bad faith.
¶ 11. The facts necessary to show that there is no viable bad faith claim are not in dispute. The Traylors had insurance cov *772 erage for the month of December 1994 that, on its face, ran only until the end of that month. Under Colonial’s procedures, if the policy were to be renewed for January 1995, the monthly premium was due December 31, 1994. The Traylors did not pay the required monthly premium necessary to renew coverage for January and Colonial presented evidence that it mailed the Traylors a notice of nonrenewal for nonpayment of premium on December 31, 1994, extending a ten day grace period to pay the premium and renew coverage. The Traylors did not take advantage of that opportunity. In fact, they claim that the notice was never received. On January 20, 1995, at approximately 7:00 in the morning the Traylor vehicle was involved in an accident. The Traylors called an agent of Colonial. They claim that they only called to verify existing coverage and allege that they were assured that coverage was in place. Interestingly, however, the Traylors did not report the fact of their accident in this telephone call. Colonial, undoubtedly having a different understanding of the purpose of the Traylors’ call, issued the Traylors a new policy having an inception date of January 20,1995— the date of the call. In keeping with their standard practice, the policy bound coverage from 12:01 a.m. on that date — a time that predated the then-unreported accident. From these facts, a dispute over coverage arose in which the Traylors assert alternate theories of coverage, claiming either (a) the second policy provided coverage on its face since its inception time was prior to the time of the accident, or (b) the first policy remained in effect since no notice of non-renewal had been received.
¶ 12. The law seems clear that, if the Traylors were relying on this second policy to establish coverage, they would be in some measure of difficulty. An insured procuring an insurance policy that would, on its face, be in force at the time of an accident that has already occurred when the insured does not disclose the fact of the accident will not be permitted to enforce coverage as to that event. State Farm Mut. Auto. Ins. Co. v. Calhoun, 236 Miss. 851, 862, 112 So.2d 366, 370-71 (1959). Therefore, the only viable claim the Traylors had that the accident was covered was based on their purported failure to receive the notice that their earlier policy would not be renewed. There is some doubt as to whether this in itself is a viable claim. Notice of cancellation of an existing policy during the term of the policy for nonpayment of the premium can only be accomplished by giving ten days’ notice to the insured of intent to cancel. Miss.Code Ann. § 83-11-5 (Rev.1991). On the other hand, once an existing policy’s term has expired, there is no corresponding duty on the part of the insurance company to give notice that the expired policy will not be renewed for another term if the basis for nonrenewal is failure to pay the renewal premium. Miss.Code Ann. § 83-ll-7(c) (Rev.1991). The facts of this case bear a striking resemblance to those appearing in the case of Willis v. Miss. Farm Bureau Mut. Ins. Co., 481 So.2d 256 (Miss.1985). In that case, Willis had a policy that expired on October 15, 1982. Despite receiving a premium notice to renew the policy, Willis failed to pay the premium. He was involved in an accident on November 5, 1982, and claimed that, because of a long association between the company and his family, he was entitled to assume that his policy would be renewed despite his failure to pay the premium and that “Farm Bureau was required to send him an express notice of cancellation before his coverage could be terminated.” Id. at 257-58. The Mississippi Supreme Court rejected that notion, observing the distinction between cancellation of an existing policy, for which notice is required, and nonrenewal of an expiring policy for which no notice is required if the reason for nonrenewal is failure to tender the required premium. Id. at 258-59. Thus, the Willis case makes it an extremely doubtful question as to whether the issue of mailing and receipt of notice of nonre-newal was even a material fact on the issue *773 of the existence of coverage under the first policy.
¶ 13. However, giving the Traylors the benefit of the doubt and treating this as a cancellation case rather than a nonrenewal case, Colonial produced evidence that it had sent a notice on December 31, 1994, that would appear to meet the requirements of Section 83-11-5. Having such evidence, Colonial was entitled to rely on the legal presumption that mail properly addressed and posted is delivered to the addressee. Thames v. Smith Ins. Agency, 710 So.2d 1213, 1216 (Miss.1998), Threatt v. Threatt, 212 Miss. 555, 558, 54 So.2d 907, 908 (1951). The presumption is, of course, rebuttable. Id. By denying that the mailing was ever received, the Tray-lors, at best, created a disputed issue of fact that could only be resolved by an impartial fact-finder presented with all available evidence bearing on the subject.
¶ 14. Conceding that to be the case, however, it is obvious that there simply is no justiciable issue as to whether (a) the Traylors’ bare denial that they received the non-renewal notice was a material fact on the issue of bad faith, and (b) assuming for argument that it was material, the denial was so compellingly believable that Colonial proceeded in bad faith when it elected to disbelieve it and rely instead on its evidence of mailing and the legal presumption of delivery.
¶ 15. There may have been a legitimate dispute over coverage in this case. However, the very fact that the dispute over coverage was a legitimate one destroys any possibility that Colonial’s earlier denial of the claim was an act of bad faith. In my view, the summary judgment ought to be affirmed.
SOUTHWICK, P.J., JOINS THIS SEPARATE WRITTEN OPINION.